**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Walt Anthony STURMOSKI, a/k/a Anthony W. Williams, Defendant–Appellant.**

**No. 91–2209.**

United States Court of Appeals, Tenth Circuit.

June 3, 1992.

firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) [Count I], possession of a firearm not identified by serial number in violation of 26 U.S.C. § 5861(i) [Count II], maintaining a place for the purpose of manufacturing methamphetamine in violation of 21 U.S.C. § 856 [Count III], attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846 [Count IV], and carrying and using a firearm to facilitate the above drug-trafficking offenses in violation of 18 U.S.C. § 924(c) [Counts V and VI]. On appeal, Sturmoski raises six arguments: (1) that the district court improperly denied his motion to suppress; (2) that the district court erred in admitting evidence of his prior acts; (3) that the district court erred in admitting expert testimony; (4) that the district court improperly denied his motions for relief from prejudicial joinder and for bill of particulars; (5) that the district court improperly sentenced him under the United States Sentencing Guidelines; and (6) that his sentence violates the Eighth Amendment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

On January 31, 1991, a state district court judge issued a search warrant for Sturmoski's residence at 237 90th Street, S.W., in Albuquerque, New Mexico. The affidavit submitted as support for the warrant described structures, vehicles, street location, fencing, and the entrance in detail because the address was not displayed on the property. The affidavit also stated that a confidential informant (informant # 1) had shown the residence to Sergeant Bill Rhem.

The affiant, Deputy Adam Simonson, stated that he had become familiar with the manufacture of methamphetamine through his experience, training and association with other· law enforcement officers. In his affidavit, Simonson noted that Sergeant Rhem had informed him that informant # 1

Darryl S. Cordle, of Albuquerque, N.M., for defendant-appellant.

Tara Neda (Don J. Svet, U.S. Atty., with her on the brief), Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and ROGERS *, District Judge.

TACHA, Circuit Judge.

Appellant Walt Sturmoski appeals his conviction and sentence for possession of a

* The Honorable Richard D. Rogers, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

had personal knowledge that Sturmoski was preparing to manufacture methamphetamine at 237 90th Street, S.W. Apparently, informant # 1 had been associated with Sturmoski and had manufactured methamphetamine in the past.

A second confidential informant (informant # 2) corroborated this information by stating that Sturmoski was involved in the manufacture of methamphetamine. Informant # 2 had observed a methamphetamine laboratory in a garage at 237 90th Street, S.W. in the summer of 1990. Further, according to informant # 2, methamphetamine oil was buried on the premises. Simonson confirmed that a suspected methamphetamine laboratory in the garage at 237 90th Street, S.W. had burned in mid-1990. Informant # 2 also had proven reliable in the past. On the basis of this and additional information, the state district court judge issued the search warrant.

At trial, Simonson testified concerning what law enforcement officers found when they executed the search warrant. They found Sturmoski located in an office trailer seated next to a loaded Ruger .22–caliber semi-automatic pistol equipped with a silencer. Articles of Incorporation for Renee Ltd., recipes for the manufacture of methamphetamine, chemicals, laboratory equipment, books and a purchase bid for phenylacetic acid on Renee Ltd. stationary also were found in the office trailer. After searching a horse trailer on the property, Simonson discovered chemicals and laboratory equipment. Officer also found various laboratory equipment and glassware in the main residence.

Agent Gary Ainsworth testified that the semi-automatic pistol traveled through interstate commerce and lacked a serial number. He stated that a target in Sturmoski's office trailer had been pierced by a .22–caliber bullet. During his testimony, Ainsworth also revealed that on July 14, 1990 he had investigated a suspected methamphetamine laboratory on the appellant's property that had burned. Finally, Ainsworth testified that Sturmoski previously had been convicted of a felony—possession with intent to distribute marijuana.

Sturmoski's sister-in-law, Jackie Sturmoski, testified that she lived on appellant's property from June 1989 to August 1990. She recalled detecting an odor similar to animal urine emanating from the garage that burned in July 1990. She also noticed laboratory glassware in the garage and stated that Sturmoski always carried a gun when he went to the garage.

During the trial, Frank Lucero was qualified as an expert in forensic chemistry. He reviewed the chemicals and equipment seized from the appellant and concluded that the only item Sturmoski lacked for the manufacture of methamphetamine was phenylacetic acid. Lucero determined that had phenylacetic acid been available the chemicals and equipment seized from the appellant would produce 3.8 pounds of methamphetamine.

Agent William Swierc was qualified as an expert in clandestine methamphetamine laboratories. Swierc testified that in only two or three laboratories out of approximately thirty he had investigated, firearms played no role in the operation of the laboratory. He testified that firearms normally were used in the operation of these clandestine laboratories to protect the investment in chemicals and equipment.

A jury returned a verdict of guilty on all six counts. After a sentencing hearing, the court sentenced Sturmoski to 135 months of imprisonment as to both Counts III and IV, to run concurrently. On Counts I and II, Sturmoski was sentenced to 120 months of imprisonment to run concurrently with each other and concurrently with the sentences imposed for Counts III and IV. The district court then sentenced appellant to two thirty-year terms of imprisonment for Counts V and VI to run consecutively to each other and to Counts I, II, III and IV.

## II.

 Sturmoski contends that the district court erred in failing to grant his motion to suppress the evidence discovered during the search because the search warrant affidavit fails to comply with Fourth

Amendment requirements. Sturmoski argues that Deputy Simonson held himself out as an expert to the judge issuing the search warrant and then presented statements to the judge made by a confidential informant that Simonson must have known were false.

To challenge the search warrant, Sturmoski must show that Simonson's statement was both material and a deliberate falsehood or disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Sturmoski asserts that because Simonson was an expert in methamphetamine manufacturing, he must have known that statements made by informant # 2 and by Agent Schlagel's confidential source were false. Informant # 2 provided the following information:

> A.W. (Sturmoski) had buried several 55 gallon drums of "meth oil" on the property at 237 90th St., S.W., and that A.W. was lacking chemicals and clean glassware for the final syntheses of methamphetamine.

Agent Schlagel's confidential source told Schlagel that "there was an underground tank on the property at 237 90th St., where the residents were storing waste and meth oil...." Sturmoski argues that Simonson could not have believed these statements because he made no effort to excavate the property and because it is also highly unlikely that someone would contaminate meth oil by mixing it with waste; furthermore, it is well known that clean glassware is not necessary for the final production of methamphetamine.

After reviewing the record, we hold that these statements were neither material to the issuance of the search warrant nor a deliberate falsehood. The record reveals that the team executing the search warrant examined the lot for a number of hours and could not discover any sign of recently disturbed ground. Thus, it would have been inappropriate for the team to excavate Sturmoski's entire four-acre lot. With regard to storing meth oil with waste and the glassware, Sturmoski's allegation alone is insufficient to demonstrate that Simonson's statements to the judge were either deliberately false or material to the issuance of the search warrant. The state district court judge had a wealth of information before him that justified the issuance of the search warrant.

Sturmoski also argues that the search warrant affidavit fails to establish probable cause. We evaluate informant information for probable cause in a search warrant affidavit under the "totality of the circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Sturmoski bases this claim on the fact that neither Sergeant Rhem nor Simonson attempted to establish the veracity of the first confidential informant. However, there is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information. *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Here, the record clearly demonstrates that the confidential information was corroborated by independent information.

Sergeant Rhem told Simonson that he had knowledge of independent information that confirmed informant # 1's information. In addition, informant # 1 made an admission against his own penal interest: he admitted to personal involvement in manufacturing methamphetamine in the past. Further, informant # 2 had observed a methamphetamine laboratory in a garage at 237 90th Street, S.W. during the summer of 1990. Informant # 2 also stated that "methamphetamine oil" was buried on the premises. Sturmoski contends that this information is stale and, therefore, cannot be used to corroborate the statements of the first confidential informant. We disagree. The offense in question was ongoing and continuing. Therefore, the passage of time is not of critical importance. *See United States v. Erickson*, 676 F.2d 408, 410 (10th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 118, 74 L.Ed.2d 103 (1982); *see also United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Thus, under the totality of the circumstances, sufficient

probable cause existed for the issuance of the search warrant.

■ Sturmoski also contends that his motion to suppress should have been granted because the warrant does not comply with the particularity requirements of the Fourth Amendment. Sturmoski claims that the affidavit does not identify his premises and completely omits the horse trailer that was searched. After reviewing the affidavit, we also must reject this claim.

In *United States v. DePugh,* 452 F.2d 915, 920 (10th Cir.1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805 (1972), we held that "the description is sufficient [if it] enable[s] the officers to ascertain the place to be searched" with reasonable effort. Here, the warrant provides the defendant's name; the buildings were described in detail; and a commonly used address on the premises is contained in the warrant. Further, Agent Ainsworth, who also participated in the search, was familiar with the premises because he investigated a fire on the property in July, 1990. Thus, Ainsworth's presence provided additional reliability that the correct premises would be searched. *See United States v. Bonner,* 808 F.2d 864, 866–67 (1st Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987).

■ With regard to the horse trailer, "[a] search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located" in those vehicles. *United States v. Gottschalk,* 915 F.2d 1459, 1461 (10th Cir.1990). In *Gottschalk,* we held that "the scope of the warrant ... include[s] those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled." *Id.* The search team discovered the horse trailer within the curtilage of the premises described by the search warrant. Moreover, the search team observed a path from Sturmoski's office trailer leading to the horse trailer, which provided reasonable indicia of control over the vehicle. Therefore, we conclude that the warrant described the premises and vehicles with sufficient particularity.

### III.

■ Sturmoski next argues that the district court incorrectly admitted evidence of prior acts under Rule 404(b) of the Federal Rules of Evidence. We review the district court's decision to admit evidence under an abuse of discretion standard. *United States v. Garot,* 801 F.2d 1241, 1247 (10th Cir.1986). Sturmoski contends that both the testimony of Jackie Sturmoski and the testimony of Agent Ainsworth contained highly prejudicial and impermissible character evidence. Sturmoski also asserts that because Jackie Sturmoski was not on the prosecution's witness list, he was unfairly surprised by her testimony.

■ Appellant's contention concerning the "surprise" testimony by Jackie Sturmoski fails because Sturmoski suffered no prejudice from the nondisclosure. Jackie Sturmoski testified on the same day the witness list was produced so that Sturmoski's counsel could not have relied on the witness list in order to prepare for trial. Under these circumstances, any failure in not preparing for Jackie Sturmoski's testimony simply cannot be attributed to the nondisclosure in the witness list. Thus, the district court did not abuse its discretion in admitting her testimony. *See United States v. Carter,* 756 F.2d 310, 312 (3d Cir.1985), *cert. denied,* 478 U.S. 1009, 106 S.Ct. 3307, 92 L.Ed.2d 721 (1986); *United States v. Greene,* 497 F.2d 1068, 1083 (7th Cir.1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).

■ Sturmoski also asserts that Jackie Sturmoski's testimony concerning her detection of an acidy smell in the area, some glassware in a garage, and her statement that Sturmoski always carried a gun with him to the garage is either impermissibly stale or is improper because it was used to demonstrate that appellant's conduct in January of 1991 was in conformity with his

conduct in August of 1990. With regard to appellant's staleness argument, we have held that there is no set rule regarding the age of prior acts. *See United States v. Franklin,* 704 F.2d 1183, 1189 (10th Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983); *see also United States v. Cuch,* 842 F.2d 1173, 1178 (10th Cir. 1988). Instead, the facts and circumstances of each case must be examined. The record indicates that Jackie Sturmoski testified regarding events that occurred only a few months earlier—events that she directly observed and that suggested the presence of a methamphetamine laboratory six months earlier. Under these facts, we conclude that Jackie Sturmoski's testimony was not impermissibly stale.

■ Turning to the Rule 404(b) issue with regard to both Jackie Sturmoski and Agent Ainsworth's testimony, Sturmoski contends that the testimony of both individuals should not have been admitted because it was designed to demonstrate conformity with earlier conduct. However, the government did not offer the testimony to demonstrate conformity with prior conduct, but rather to demonstrate Sturmoski's plan to incorporate Renee Ltd. in order to solicit phenylacetic acid.

The defense, in its opening statement, stated that the creation of Renee, Ltd. and Sturmoski's desire to procure phenylacetic acid was for the purpose of manufacturing mechanics soap. The government introduced the testimony of Jackie Sturmoski and Agent Ainsworth in order to rebut this assertion and to demonstrate why Sturmoski desired to procure phenylacetic acid. In *United States v. Record,* 873 F.2d 1363, 1375 (10th Cir.1989), we emphasized that the use of prior drug involvement to show plan, motive or intent in a drug trafficking offense is appropriate. Moreover, the district court gave an instruction, prepared by the defense, which explained the limited use of prior acts as evidence in order to

avoid any prejudice to the defendant. Therefore, given the facts of this case, we cannot say that the district court abused its discretion in allowing both Jackie Sturmoski and Agent Ainsworth to testify.

## IV.

■ Sturmoski also argues that the district court erred in qualifying Agent Swierc as an expert in the areas of methamphetamine labs and the use of firearms in the operation of those labs. Appellant asserts that this subject matter is not appropriate for an expert and that Swierc's testimony was not at all "helpful to the trier of fact" as required by Rule 702 of the Federal Rules of Evidence. We review the district court's admission of expert testimony under an abuse of discretion standard. *United States v. Vreeken,* 803 F.2d 1085, 1091 (10th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

■ After reviewing the trial transcript, we conclude that the agent's testimony was useful to describe the value of clandestine laboratories and the presence of firearms at those laboratories. Without the agent's testimony, the jury would have known neither the investment that a methamphetamine lab requires nor the desire of the operator of such a lab to protect that investment through the use of firearms. Further, under Rule 704 of the Federal Rules of Evidence, opinion testimony describing the overall activities based on "the tools of the narcotics trade" found with the defendant is permissible. *United States v. Dunn,* 846 F.2d 761, 762–63 (D.C.Cir.1988). The agent's testimony was indispensable to demonstrate to the jury that guns are tools of the narcotics trade—particularly where a large investment in chemicals and equipment has been made.[1] Thus, the district court did not abuse its discretion either in classifying Agent Swierc as an expert or in admitting his testimony.

1. We note that in *United States v. Perrone,* 936 F.2d 1403 (2d Cir.1991), the Second Circuit expressed concern over the use of expert testimony to demonstrate that guns are commonly used in the drug trade because this knowledge is "seemingly within the grasp of any citizen." *Id.*

at 1411. We disagree that this type of information is within the grasp of any citizen. Therefore, expert testimony concerning the tools of the drug trade is appropriately admitted to assist the trier of fact.

## V.

Sturmoski further argues that he was highly prejudiced by the district court's refusal to sever Count I, felon in possession of a firearm, from the remaining counts in the indictment. Because the underlying felony regarding the felon in possession count was possession of marijuana with intent to distribute, Sturmoski asserts that evidence of that underlying conviction impermissibly created an inference of criminal disposition regarding drug-related crimes.

■■■■ Because the grant of a severance is within the sound discretion of the district court, we will not reverse that decision absent a strong showing of prejudice. *United States v. Strand,* 617 F.2d 571, 575 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). Rule 8(a) of the Rules of Criminal Procedure provides that

> [t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Thus, joinder is proper under Rule 8(a) if the offenses are of the same character, *see United States v. Eagleston,* 417 F.2d 11, 14 (10th Cir.1969), if they grow out of a common scheme or plan, *see Roth v. United States,* 339 F.2d 863, 865 (10th Cir.1964), or if the offenses are based on connected acts or transactions. *See United States v. Dickey,* 736 F.2d 571, 591 (10th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Prejudicial joinder occurs under Rule 14 of the Federal Rules of Criminal Procedure only "if an individual's right to a fair trial is either threatened or actually deprived." *Id.* Prejudicial joinder did not occur in this case. First, joinder was appropriate under Rule 8(a) because the possession of the firearm was part of the drug trafficking offense. Second, given the ample evidence of the defendant's involvement with methamphetamine laboratories, it is clear that the prior marijuana conviction did not unduly influence the jury. Third, no undue emphasis was placed on Sturmoski's prior conviction. *See United States v. Valentine,* 706 F.2d 282, 290 (10th Cir.1983) (defendant failed to make a persuasive showing of prejudice where prior conviction did not receive undue emphasis at trial). The record reveals plenty of evidence on which the jury could have convicted Sturmoski on the methamphetamine charges without any mention of the prior marijuana conviction. Thus, we cannot conclude that joinder deprived or threatened Sturmoski's right to a fair trial.

■■■■ Sturmoski also asserts that the district court erred in denying his motion for a bill of particulars because such a bill was necessary to inform him of the specific nature of the charges against him, the time, place, and manner of the commission of the alleged offenses, and to enable him to prepare a defense and avoid unfair surprise at trial. We review the district court's decision to deny a motion for a bill of particulars under an abuse of discretion standard. *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988).

■■■■ Sturmoski does not allege that he was deprived of full discovery. Given the government's full disclosure and Sturmoski's failure to show that he was "actually surprised at trial and thereby incurred prejudice to his substantial rights," the district court acted appropriately in denying his motion and certainly did not abuse its discretion. *See id.*

## VI.

■■■■ Appellant asserts that the district court's imposition of two consecutive thirty-year sentences for two convictions under 18 U.S.C. § 924(c) constitutes punishment for the same act. Sturmoski was convicted of maintaining a place to manufacture a controlled substance in violation of 21 U.S.C. § 856 [Count III], attempting to manufacture a controlled substance in violation of 21 U.S.C. §§ 841(a) and 846 [Count IV], carrying and using a firearm to facili-

tate maintaining an establishment for the purpose of methamphetamine manufacture [Count V], and carrying and using a firearm to facilitate the attempt to manufacture methamphetamine [Count VI]. Appellant maintains that the above convictions punish him twice for the possession of one firearm in the commission of only one offense. He argues that maintaining a place to manufacture methamphetamine inherently suggests attempting to manufacture and that attempting to manufacture suggests maintaining a place. Two separate convictions, however, can arise from an essentially identical set of facts as long as double jeopardy is not implicated. *See United States v. Savaiano*, 843 F.2d 1280, 1292–93 (10th Cir.1988).

We have held that consecutive sentences may be imposed for multiple 924(c) counts if the offenses underlying each 924(c) count do not constitute a single offense for double jeopardy purposes. *United States v. Chalan*, 812 F.2d 1302, 1315–17 (10th Cir. 1987), *cert. denied*, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988); *see also United States v. Abreu*, 962 F.2d 1425, 1433–34 (10th Cir.1992). Thus, we must decide whether the underlying offenses in Count III (maintaining a place to manufacture a controlled substance in violation of 21 U.S.C. § 856) and Count IV (attempting to manufacture a controlled substance in violation of 21 U.S.C. § 846) constitute separate offenses for double jeopardy purposes. If so, then two consecutive sentences may be imposed under 924(c) even though the underlying offenses arise out of the same criminal episode, *Abreu*, 962 F.2d at 1434, and even though the same gun is paired with each underlying offense. *See Chalan*, 812 F.2d at 1316 (where defendant received two separate 924(c) convictions for using the same gun in connection with a robbery and first degree murder, court vacated the sentence and conviction on one 924(c) count because the underlying offenses constituted a single offense for double jeopardy purposes); *see also United*

*States v. Henry*, 878 F.2d 937, 943 (6th Cir.1989) (determination of whether 924(c) counts merge depends on whether they are tied to separate predicate offenses, not on whether there was more than one gun involved).

 In the context of a single prosecution, where the offenses underlying separate 924(c) counts cover the same criminal episode, we must limit our review to whether Congress intended multiple convictions and sentences for the underlying offenses. *See United States v. Morehead*, 959 F.2d 1489, 1505–06 (10th Cir.1992); *see also Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). We discern the intent of Congress by looking first to the plain language of the statute and then to legislative history. *Morehead*, 959 F.2d at 1506; *United States v. Lanzi*, 933 F.2d 824, 825 (10th Cir.1991). If legislative intent is unclear, we apply the "rule of statutory construction" from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[2]

 After reviewing the plain language of 21 U.S.C. § 856 and the relevant legislative history, we conclude that Congress intended multiple convictions and punishments for the offenses charged in Counts III and IV. The statutory language and legislative history of 21 U.S.C. § 856(a) demonstrate that Congress intended to create a new felony that would punish a defendant's *use of property* for manufacturing activities related to narcotics. The plain language of the statute evidences a clear congressional intent to punish a defendant who maintains property for the purpose of manufacturing controlled substance. This section goes beyond the proscriptions found in other statutes relating to possession and manufacture of con-

---

**2.** The *Blockburger* rule states that

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied ... is whether

each provision requires proof of a fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

trolled substances and actually criminalizes a particular defendant's use of property.

The legislative history of § 856 reinforces this plain language analysis. Originally introduced in the Senate as part of the Emergency Crack Control Act of 1986, § 856 appeared on the Senate floor several weeks before the Senate began consideration of the Anti–Drug Abuse Act. 132 Cong.Rec. S10,425 (daily ed. Aug. 5, 1986). Senator Chiles, one of the sponsors of the Emergency Crack Control Act of 1986, described the "crack house" provision as a *"new offense* of 20 years and/or $250,000 for those who maintain or operate a crack house or facility where drugs are manufactured, distributed, used or stored." *Id.* (emphasis added); *see also id.* (statement of Senator Mitchell, a supporter of the Emergency Crack Control Act, who described the "crack house" provision as a "new offense").

Congress eventually enacted § 856 as part of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207, 3207–52. In September of 1986, the Senate added § 856 and a number of other provisions to the House version of this act, H.R. 5484, *see* 132 Cong.Rec. S13,779–80 (daily ed. Sept. 26, 1986), and summarized § 856 as a provision that "outlaws operation of houses or buildings, so-called 'crack houses' where 'crack', cocaine and other drugs are manufactured and used." *Id.* at S13,780; *see also id.* at S14288 (daily ed. Sept. 30, 1986) (the Senate bill "recognizes crack's insidious impacts on neighborhoods by outlawing crack houses") (statement of Senator Chiles). This legislative history demonstrates that, by enacting § 856, Congress unequivocally determined to create a distinct offense—with its own, separate punishment—aimed specifically at criminalizing the use of property for narcotics-related purposes.[3] Thus, Sturmoski's double jeopardy claim must fail.

■ Sturmoski also challenges his sentence on the grounds that the district court incorrectly applied the Sentencing Guide-

lines by calculating his sentence based on the laboratory's productivity—even though it was impossible to produce any amount of methamphetamine at his lab. Sentencing Guidelines § 2D1.4, Application Note 2 specifies that when there is no drug seizure reflective of the scale of the offense, the judge may consider the size or the capability of the laboratory involved to determine the offense level. We have held that it is appropriate to "estimate the ultimate quantity of produceable drugs" if the missing chemical was present. *United States v. Havens,* 910 F.2d 703, 705 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991); *see also United States v. Leopard,* 936 F.2d 1138 (10th Cir.1991). Therefore, the district court correctly computed appellant's sentence by calculating the amount of methamphetamine the laboratory could have produced had the missing chemical been available.

## VII.

■ Appellant finally contends that the sentence imposed was disproportionate and excessive in violation of the Eighth Amendment because it is in effect a life sentence. We agree with the Eighth Circuit's determination in *United States v. Meirovitz,* 918 F.2d 1376, 1380–82 (8th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 101, 116 L.Ed.2d 71 (1991), that a life sentence for a drug trafficker does not violate the Eighth Amendment. With regard to whether Sturmoski's sentence is disproportionate to his conduct, we follow the Supreme Court's analysis in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). After reviewing the three factors announced in *Solem* and the facts of this case, we conclude that Sturmoski's sentence was not disproportionate to his conduct and compares with sentences received by others who have engaged in similar conduct in this jurisdiction and in other jurisdictions.

We note that in his reply brief, Sturmoski asks us to rule that there is insufficient evidence to support his conviction on

---

**3.** Because we conclude that Congress intended to separately punish violations of § 856, we need not apply the *Blockburger* test.

Counts III–VI. After carefully reviewing the record, we find there is ample evidence to support his conviction on each of these counts.

AFFIRMED.