**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 17 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SERGIO PINUELAS-SAUCEDA, also
known as Marco Antonio Magnino,

Defendant-Appellant.

No. 02-8023
(D.C. No. 01-CR-03-B)
(D. Wyo.)

---

**ORDER AND JUDGMENT**

---

Before **BRISCOE** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** , Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Sergio Pinuelas-Sauceda pleaded guilty to illegal reentry of a previously deported alien, and also entered a conditional guilty plea to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841, subject to his right to appeal the district court's denial of his motion to suppress. *See* Fed. R. Crim. P. 11(a)(2) (conditional pleas). On appeal defendant contends that the district court erred by not suppressing evidence obtained as a result of a warrant issued to search the house where he was arrested in Torrington, Wyoming. In particular, defendant argues that the warrant was based on "stale" information and on unreliable statements from a police informant. We affirm.

## I. Background

Beginning in August 2000, law enforcement officers began an investigation into methamphetamine trafficking in Scotts Bluff County, Nebraska. Between August and December of 2000, officers made three controlled buys of methamphetamine from Anna Adams. Adams was arrested on December 10, 2000, and agreed to cooperate with the police by providing statements identifying her supplier.

Adams admitted buying at least four pounds of methamphetamine over the preceding three to six months from a man she knew as "Kia-amo," from Phoenix, Arizona. Adams stated that she traveled to Phoenix on numerous occasions to

buy half-pound to one-pound amounts of methamphetamine from Kia-amo, paying between $7,000 to $8,000 per pound.

Adams stated that she also met with Kia-amo and his associates to buy methamphetamine at a trailer house located at 527 E. 3rd in Torrington, Wyoming. Adams admitted buying methamphetamine from Kia-amo at that location on December 9, 2000, the day before her arrest and interview. She stated that she bought two ounces of methamphetamine that day, but that she saw approximately two pounds of the drug in the house. Adams also admitted that $4,200 in cash found in her car at the time of her arrest belonged to Kia-amo, and that she had been instructed to send the money to one of Kia-amo's associates in Phoenix.

Adams stated that she did not know Kia-amo's real identity, but that she had seen a Mexico identification card with the name Mauricio Moreno. She also stated that she had traded two cars to Kia-amo in exchange for drugs within the past six months. Further, Adams said that Kia-amo and two of his associates were currently in Room 12 of the Sands Motel in Scottsbluff, Nebraska. According to Adams, one of the two bartered vehicles was parked outside that motel. The other car, she said, was parked outside the trailer house in Torrington. Finally, based on her association with Kia-amo, Adams stated that she believed Kia-amo was a large-scale drug trafficker.

Acting on this information, officers went to Room 12 of the Sands Motel, where they found three Hispanic men. One of the men had an identification card with the name Mauricio Moreno. That man told officers that a vehicle parked outside the motel belonged to him, although it was registered to Adams. Police arrested the three men after determining they were in the United States illegally.

Later that day police transported Adams to Torrington, Wyoming, where they met Special Agent Propps of the Wyoming Division of Criminal Investigation. Adams identified the trailer house at 527 E. 3rd as the house in which she bought methamphetamine. Additionally, she identified a car parked in the driveway of that house as one of the two vehicles she traded to Kia-amo for drugs.

The next day, December 11, 2000, Special Agent Propps prepared an affidavit requesting a warrant to search the house at 527 E. 3rd for methamphetamine and for paraphernalia commonly associated with the sale and use of the drug. The affidavit included a narrative of events surrounding Adams' arrest as well as her statements to police and subsequent identification of the house and car in Torrington. The warrant was issued and executed the same day, resulting in the seizure of a quantity of methamphetamine. During the search, police arrested defendant attempting to flee the house. He was subsequently charged with illegal reentry of a previously deported alien, in violation of 8

U.S.C. § 1326, and of possession with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841.

Defendant moved to suppress the evidence obtained pursuant to the search warrant arguing, among other things, that the information in the affidavit was impermissibly stale and that Adams' incriminating statements were unreliable. The district court rejected those arguments and denied the motion. Defendant ultimately pleaded guilty to both counts, reserving the right to appeal the district court's denial of his motion to suppress. Defendant was sentenced, and now appeals the court's ruling on the motion.

## II. Standard of Review

A judge's task in assessing whether probable cause exists to issue a search warrant

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[A] magistrate judge's decision to issue a warrant is entitled to great deference from the reviewing court." *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 122 S. Ct. 195 (2001). "Accordingly, we need only ask whether, under the totality of the circumstances presented in the affidavit, the

magistrate judge had a substantial basis for determining that probable cause existed." *Id.* (internal quotation marks omitted); *see also Gates*, 462 U.S. at 238-39. Probable cause exists when the affidavit "sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 1336 (2002). When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's findings of fact unless they are clearly erroneous. *Id.* But the ultimate determination of reasonableness under the Fourth Amendment is reviewed de novo. *Id.*

### III. Staleness

Defendant first contends that the information contained in the affidavit was stale because Adams' observation of drugs in the Torrington, Wyoming, house was two days before the execution of the warrant. We have held that "[p]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow,* 919 F.2d 1458, 1459 (10th Cir. 1990). To determine whether information is stale, however, we look not only at the element of time, but also at "the nature of the criminal activity, the length of the activity, and the nature of the property

to be seized." *Id.* at 1460 (internal quotation marks omitted). In particular, "where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972).

In the present case we agree with the district court that the information used to support the warrant was not impermissibly stale. In addition to the relatively brief period of time between Adams' observation and the execution of the warrant, *cf. Andresen v. Maryland*, 427 U.S. 463, 478-79 n.9 (1976) (noting three-month time lapse was not unreasonable under the circumstances); *Johnson*, 461 F.2d at 287 (holding that information obtained three weeks before affidavit was filed was not stale), the affidavit contains information evidencing a large-scale and continuing drug distribution operation. The affidavit recounts a three-month criminal investigation into Adams' drug activity. The affidavit also contains Adams' statements that she had purchased methamphetamine on "numerous occasions" (totaling at least four pounds of the drug) over the past three to six months from the man whom she believed rented the Torrington, Wyoming, house. Additionally, the affidavit indicates Adams and Kia-amo routinely dealt with large amounts of cash; Adams stated she paid Kia-amo $7,000 to $8,000 per pound of methamphetamine and admitted she was holding $4,200 for his benefit at the time of her arrest. The cumulative nature of this

information, coupled with Adams' statement of seeing a two-pound supply of methamphetamine at the Torrington house during her most recent purchase, is enough to suggest that the items listed in the warrant were likely to be found in the place to be searched. *See United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 873 (10th Cir. 1992) (holding that evidence of past drug activity, coupled with recent purchases with large amounts of cash, demonstrated "a strong probability of continuous ongoing criminal involvement covering a broad span of time"). Thus, we conclude that the warrant was not based on stale information.

## IV. Informant Reliability

Defendant next contends that Adams' incriminating statements to the police were unreliable. "We evaluate informant information for probable cause in a search warrant affidavit under the 'totality of the circumstances' test." *United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir. 1992) (quoting *Gates*, 462 U.S. at 238). In his brief on appeal, defendant challenges the affidavit's validity based on the lack of an attestation that Adams was reliable. But "even if we entertain some doubt as to an informant's motives, h[er] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles h[er] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. Thus, the detail of Adams' information lends it substantial credibility. In addition, we have held that "there is no need for a

declaration of the reliability of an informant when the informant's information is corroborated by other information." *Sturmoski*, 971 F.2d at 457. An informant's allegations of criminal conduct may be corroborated by independent verification of facts not in themselves incriminatory, because such verification provides a "substantial basis for crediting" the incriminating allegation. *Gates*, 462 U.S. at 245 (internal quotations marks deleted). *See Draper v. United States*, 358 U.S. 307, 309-10, 312-13 (1959). In the present case, the district court concluded that Adams' statements concerning methamphetamine sales in the Torrington house were independently verified by the following information:

> 1) on December 10, 2000, [police officers] went to room number 12 at the Sands Motel and contacted three Hispanic males, one of whom was carrying a Mexico Identification card with the name Mauricio Moreno; 2) [police officers] located a vehicle registered to [Adams] parked outside room number 12; and 3) the man carrying the Mexico Identification card with the name Mauricio Moreno told [police officers] that the vehicle registered to [Adams] was in fact his vehicle.

R., Vol. 1, Doc. 70 at 14. Moreover, the affidavit for the warrant states that officers determined that the utilities for the Torrington house were in the name of Ed Perez, thereby confirming Adams' statement that the landlord was a man named "Ed" with an Hispanic last name. Hence, we conclude that the issuing judge could properly credit Adams' allegations of criminal activity.

## V. Conclusion

Because we conclude that the judge had a substantial basis for finding probable cause to issue the warrant, the judgment of the United States District Court for the District of Wyoming is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge