FILED
United States Court of Appeals
Tenth Circuit

November 18, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

PHILBERT RENTZ,

      Defendant - Appellee.

No. 12-4169

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:11-CR-00771-CW-PMW-1)**

---

Trina A. Higgins, Assistant United States Attorney (David B. Barlow, United States Attorney, with her on the briefs), Office of the United States Attorney for the District of Utah, Salt Lake City, Utah, for Plaintiff-Appellant.

Jeremy M. Delicino, Jeremy M. Delicino, LLC, Salt Lake City, Utah (Elizabeth A. Lorenzo, Jeremy M. Delicino, LLC, Salt Lake City, Utah, and Stephen R. McCaughey, McCaughey & Metos, Salt Lake City, Utah, with him on the brief), for Defendant-Appellee.

---

Before **KELLY, MATHESON,** and **BLACKBURN,**[*] Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

    [*]Honorable Robert E. Blackburn, District Court Judge, District of Colorado, sitting by designation.

After Philbert Rentz fired a single gunshot that wounded one victim and killed another, he was charged with two separate counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Mr. Rentz moved to dismiss the second § 924(c) count. The district court granted his motion, holding that § 924(c) cannot support multiple § 924(c) charges arising from a single use of a firearm. The Government appeals the pre-trial dismissal of the second § 924(c) count. Exercising jurisdiction under 18 U.S.C. § 3731, we reverse.

## I.  BACKGROUND

### A. *Factual Background*

The relevant factual history is a split second in time—the moment on July 23, 2011, in Indian country, when Philbert Rentz, a member of the Navajo Nation, fired a single gunshot from his Hi-Point 9 mm carbine. The lone bullet passed through the body of and seriously injured Verveen Dawes. The same bullet then struck and killed Tedrick Francis.[1]

### B. *Procedural Background*

---

[1] In his brief, Mr. Rentz has included additional facts suggesting that he was acting in self-defense or defense of others when he fired his weapon. These facts have not been stipulated and are not included in the record on appeal. The parties will have full opportunity to litigate these facts and issues at trial.

A grand jury indicted Mr. Rentz on five charges[2] —Count I: murder while within Indian country in violation of 18 U.S.C. § 1111; Count III: use of a firearm in furtherance of murder in violation of 18 U.S.C. § 924(c); Count IV: assault causing serious bodily injury while within Indian country in violation of 18 U.S.C. § 113(a)(6); Count VI: use of a firearm in furtherance of assault in violation of 18 U.S.C. § 924(c); and Count VII: possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g).

Before trial, Mr. Rentz moved to dismiss Count VI (use of a firearm in furtherance of assault). He argued that (1) Congress did not intend to punish a person for two violations of § 924(c) based on a single use of a firearm; and (2) punishment on both Counts III and VI would violate the Double Jeopardy Clause of the Fifth Amendment.[3]

In a brief oral ruling, the district court granted Mr. Rentz's pre-trial motion and dismissed Count VI, holding that § 924(c) does not permit multiple charges arising from a single use of a firearm. The Government filed a timely appeal.

## II. **DISCUSSION**

---

[2] Counts II and V of the Indictment charged a co-defendant who is not a party to this appeal.

[3] As our analysis shows, the proper focus is on whether the *underlying* offenses—murder and assault causing serious bodily injury—violate the Double Jeopardy Clause. We can understand why Mr. Rentz would challenge the two § 924(c) counts themselves on this ground because any double jeopardy problem with the underlying charges would extend to the § 924(c) offenses as well. *See United States v. Barrett*, 496 F.3d 1079, 1095-96 (10th Cir. 2007).

A. *Jurisdiction*

We have jurisdiction over this interlocutory appeal of the district court's order dismissing Count VI of the Indictment because 18 U.S.C. § 3731 authorizes us to hear appeals by the United States "from a decision, judgment, or order of a district court dismissing an indictment . . . as to any one or more counts, or any part thereof." Jurisdiction is proper when the Government challenges the dismissal of one count of a multi-count indictment. *See United States v. Qayyum*, 451 F.3d 1214, 1216 (10th Cir. 2006); *see also United States v. Schneider*, 594 F.3d 1219, 1225-26 (10th Cir. 2010) (appellate jurisdiction attaches upon dismissal of an entire count or any portion thereof).

B. *Issues and Standard of Review*

We address (1) whether § 924(c) permits two § 924(c) violations to be charged based on two underlying crimes of violence arising from a single use of a firearm, and (2) whether charging the two crimes of violence would violate the Double Jeopardy Clause.[4]

---

[4] On the eve of oral argument, Mr. Rentz submitted a letter under Fed. R. App. P. 28(j) urging that the Government waived its statutory interpretation arguments because they do not appear in its opening brief. *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

The Government's brief stated the issue for review as "[w]hether charging two 924(c) counts based on two distinct crimes of violence but a single use of a firearm violates the Double Jeopardy Clause." Aplt. Br. at 1.

Despite its seemingly conflated statement of the issue, the Government has not waived its statutory construction arguments, though only by a narrow margin. Its opening brief's treatment of the standard of review refers to "construing statutes" and "statutory interpretation," *id.* at 4, and the brief discusses Tenth Circuit cases that interpret § 924(c), *id.* at 4-7, 9.

Continued . . .

We review the district court's statutory interpretation de novo. *United States v. Handley*, 678 F.3d 1185, 1189 (10th Cir. 2012). We review the double jeopardy issue de novo as well. *United States v. Ahrensfield*, 698 F.3d 1310, 1322 (10th Cir. 2012); *United States v. Morris*, 247 F.3d 1080, 1083 (10th Cir. 2001).

## C. *Analysis*

### 1. **Introduction**

18 U.S.C. § 924(c) criminalizes the use of a firearm in connection with a federal crime of violence or drug trafficking offense. A § 924(c) firearm charge is therefore derivative in nature. It rests on the commission of an underlying predicate offense— either a violent or a drug trafficking crime. "[I]t is unnecessary for a criminal defendant charged with a § 924(c) offense to be separately charged with and convicted of the underlying offense." *United States v. Barrett*, 496 F.3d 1079, 1094 (10th Cir. 2007). But

---

Cont.

Moreover, the double jeopardy and § 924(c) issues are entwined. In *United States v. Chalan*, 812 F.2d 1302 (10th Cir. 1987), the defendant framed his issue similarly to the way the Government did in this case—whether two § 924(c) consecutive sentences for the underlying offenses of robbery and murder violate the Double Jeopardy Clause. We recast the issue as one of statutory construction—"whether Congress intended by section 924(c) to impose multiple sentences." *Id*. at 1315.

Finally, we have held that the waiver rule is intended to protect appellees by giving them "the opportunity . . . to present an analysis of the pertinent legal precedent that may compel a contrary result," as well as to provide the court with full arguments on both sides of the issue. *Anderson*, 422 F.3d at 1175 (quoting *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000)). In this case, Mr. Rentz had full opportunity to argue the statutory interpretation issue—an issue that he himself had raised at the district court— and he did so in his answer brief. Aplee. Br. at 12. Mr. Rentz has not contended that he has had inadequate opportunity to present his own statutory interpretation arguments.

"to establish a violation of § 924(c), the Government must prove . . . the Defendant[] committed the underlying crime of violence." *United States v. Shuler*, 181 F.3d 1188, 1189-90 (10th Cir. 1999).

Mr. Rentz is charged with two predicate offenses—murder and assault causing serious bodily injury. It would likely be uncontested in most cases that these two predicate offenses would support two § 924(c) derivative offenses. But this case arises from the unusual circumstance of a single gunshot causing both predicate offenses.

Our analysis proceeds as follows. First, we examine the language of § 924(c) and our precedent and conclude that the statute allows two § 924(c) charges based on a single gunshot. Second, we determine that the offenses underlying Mr. Rentz's § 924(c) charges—murder and assault causing serious bodily injury—do not violate the Double Jeopardy Clause. Finally, we address the district court's decision, which overlooked Tenth Circuit precedent.

We conclude that the two § 924(c) charges here are proper and that the district court erred in dismissing one of them.

## 2. **Whether § 924(c) Permits Multiple Charges**

a. *Statutory Language*

We begin with the text of the statute. *See Handley*, 678 F.3d at 1189. Section § 924(c)(1)(A) states:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a

deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm . . . shall, in addition to the punishment provided for such crime of violence or drug crime—

. . .

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Our task is to determine the proper "unit of prosecution" under this statute—that is, whether § 924(c) can support multiple charges arising from a single use of a firearm, or whether each § 924(c) charge must be predicated upon a separate use of a firearm.

The word "any" in "during and in relation to *any* crime of violence" (emphasis added) suggests that Congress intended to punish an armed offender with a separate § 924(c) count for each underlying violent crime. We do not think the phrase "uses . . . a firearm" overcomes this understanding of the text, though we note that three circuits consider the statute to be ambiguous. *See United States v. Phipps*, 319 F.3d 177, 184-85 (5th Cir. 2003); *United States v. Finley*, 245 F.3d 199, 207 (2d Cir. 2001); *United States v. Wilson*, 160 F.3d 732, 749-50 (D.C. Cir. 1998). *But see United States v. Sandstrom*, 594 F.3d 634, 659 (8th Cir. 2010). Nonetheless, our precedent answers the issue presented here.

b. *Applicable Precedent*

First, we examine Tenth Circuit cases analyzing the unit of prosecution under § 924(c). They hold that multiple § 924(c) firearm charges arising from the same criminal episode are proper when there are multiple underlying violent or drug-trafficking offenses. Second, we discuss *United States v. Barrett*, which specifically

-7-

holds that a single gunshot can give rise to multiple § 924(c) charges. *See* 496 F.3d at 1095-96.

i. Cases Analyzing Multiple Charges Under § 924(c)

Our cases recognize that multiple § 924(c) counts are permitted based on a single criminal episode. They hold that the only issue to be decided is whether the underlying violent or drug-trafficking offenses themselves can be charged together without violating the Double Jeopardy Clause. We have held repeatedly that "[i]n the context of a single prosecution, where the offenses underlying separate 924(c) counts cover the same criminal episode, we must limit our review to whether Congress intended multiple convictions and sentences for the underlying offenses." *United States v. Sturmoski*, 971 F.2d 452, 461 (10th Cir. 1992). Multiple § 924(c) counts are permissible so long as the underlying offenses are separate for double jeopardy purposes. *See United States v. Chalan*, 812 F.2d 1302, 1315-17 (10th Cir. 1987).

Both *Sturmoski* and *Chalan* addressed double jeopardy challenges rather than challenges premised on statutory interpretation of § 924(c) itself. But in *United States v. Malone*, 222 F.3d 1286 (10th Cir. 2000), the defendant argued—as Mr. Rentz does here—that § 924(c) itself did not authorize two firearm charges when the two predicate offenses were part of a continuous course of conduct. *Id.* at 1292-93. On plain error review, we concluded that "our precedent forecloses this argument." *Id.* at 1293. We held that Tenth Circuit cases, including *Sturmoski* and *Chalan*, "implicitly . . . determine[d] whether one or two convictions for [separate] underlying offenses could be

-8-

maintained under the language of the statute." *Id.* We found these cases "controlling" and held that the proper "unit of prosecution" under § 924(c) is a single underlying offense—meaning that two convictions under § 924(c) arising from the same course of conduct were proper under the language of § 924(c).

Based on this unit of prosecution analysis, we have consistently allowed multiple § 924(c) counts when each one is based on a drug trafficking crime or a crime of violence arising from conduct occurring within a brief period of time. *See id.* (upholding two § 924(c) convictions for using a firearm in relation to the crimes of robbery and carjacking arising from a continuous course of conduct); *United States v. Floyd*, 81 F.3d 1517, 1527 (10th Cir. 1996) (permitting two § 924(c) counts for underlying offenses of kidnapping and carjacking in a single incident); *United States v. Callwood*, 66 F.3d 1110, 1114-15 (10th Cir. 1995) (upholding three convictions under § 924(c) tied to three separate drug-related offenses in a single criminal episode); *Sturmoski*, 971 F.2d at 461-62 (upholding sentences on two § 924(c) counts for the crimes of maintaining an establishment for the purpose of methamphetamine manufacture and attempting to manufacture methamphetamine).

We have further upheld multiple convictions under § 924(c) arising from the same criminal conduct. *See United States v. Renteria*, 720 F.3d 1245, 1256 (10th Cir. 2013) (upholding under plain error review separate § 924(c) charges for possession of methamphetamine with intent to distribute and conspiracy to traffic in methamphetamine); *Barrett*, 496 F.3d at 1095-96 (permitting two § 924(c) counts for

using a firearm in relation to drug-trafficking crimes as well as a crime of violence, where both charges were based on the same use of a firearm).

Mr. Rentz argues that the preceding cases do not determine the outcome here because the facts of this case are unique and present an issue of first impression in this circuit. He asserts this court has never addressed whether a single *act*, rather than a single criminal episode or course of conduct, can give rise to multiple charges under § 924(c). According to Mr. Rentz, all of the cases in which we have held that a separate § 924(c) charge can be predicated on each underlying offense have involved continuous criminal conduct rather than a lone act. He argues that these precedents do not control here because he fired only a single gunshot.

Mr. Rentz, however, is wrong that we have never considered a "single act" case because we did so in *United States v. Barrett*.

### ii.     *United States v. Barrett*

In *Barrett*, we addressed the scenario of a single gunshot giving rise to two underlying offenses and two § 924(c) counts—the same scenario in Mr. Rentz's case. And in *Barrett*, we upheld both § 924(c) charges because the underlying offenses were separate for double jeopardy purposes. *Barrett*, 496 F.3d at 1095-96.

Kenneth Barrett was involved in a shoot-out with police officers executing a search warrant on his home for methamphetamine and other evidence of drug-trafficking crimes. *Id.* at 1082-85. Trooper David Eales of the Oklahoma Highway Patrol's Tactical Team was struck by three gunshots from "continuous gunfire" as he emerged from a

vehicle at Mr. Barrett's residence. *Id.* at 1084-85. A later crime scene investigation determined that Mr. Barrett had fired approximately 19 shots at law enforcement officers. Three of these shots hit Trooper Eales—one in his chest, one in his flank, and one in his arm. The gunshot wound to the chest struck Trooper Eales's aorta, and this injury was determined to be the cause of his death. *Id.* at 1085.

Mr. Barrett was convicted of two counts in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j)[5]: (1) using a firearm "during and in relation to several drug-trafficking crimes, resulting in the death of a state law enforcement officer"; and (2) using a firearm "during and in relation to the killing of a state law enforcement officer engaged in or on account of the performance of such officer's duties." *Id.* at 1082. He was not separately charged with the offenses underlying these two counts. *Id.* at 1093-94. To convict him on both § 924(c) counts, however, the jury was required to find that Mr. Barrett had "committed at least one underlying offense with respect to each Count 1 and 2." *Id.* at 1094.

Relying on *Sturmoski*, 971 F.2d at 461, we held that Counts 1 and 2 charging § 924(c) offenses[6] were both proper because Mr. Barrett's underlying offenses—(1) "several drug-trafficking crimes resulting in the death of a state law enforcement officer"

_____

[5] 18 U.S.C. § 924(j) provides that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through use of a firearm, shall—if the killing is a murder . . . be punished by death or by imprisonment for life; and if the killing is manslaughter (as defined in section 1112), be punished as provided in that section."

[6] Section 924(j) adds to a § 924(c) offense a sentencing enhancement for murder or manslaughter.

and (2) killing a state law enforcement officer—were distinct. *Id.* at 1096.

Mr. Rentz attempts to distinguish *Barrett* as involving "a single, continuous use of a firearm," Aplee. Br. at 7 (quoting *Barrett*, 496 F.3d at 1096), rather than a single act. Yet the same single gunshot—the fatal shot to Trooper Eales's chest—produced both predicate offenses underlying Mr. Barrett's two § 924(c) charges. Count 1 required proof that Mr. Barrett "committed one or more of the predicate drug-trafficking offenses" and that "in the course of using the firearm Barrett killed Eales." *Barrett*, 496 F.3d at 1095. Count 2 required the Government to prove that Barrett committed the predicate offense of killing a state law enforcement officer engaged in his duties. *Id.* at 1095-96. Although Mr. Barrett fired a stream of shots, only the single shot to Trooper Eales's chest satisfied the required elements of the §§ 924(c)(1)(A) and 924(j) offenses.

Mr. Rentz fired only one bullet, and Mr. Barrett fired several shots in addition to the one that killed Trooper Eales. But this distinction makes no difference. If we were to draw the line at "single gunshot" cases, as Mr. Rentz urges us to do, we would be forced to dismiss Mr. Rentz's second § 924(c) charge in the instant case, but permit two § 924(c) charges under *Barrett* if Mr. Rentz had fired additional warning shots into the air along with the single bullet that wounded Mr. Dawes and killed Mr. Francis.

If anything, the present case lends itself *more* readily to multiple § 924(c) charges than *Barrett* does. Mr. Rentz shot two victims. In *Barrett*, both charges stemmed from a single injury to a single victim—the fatal gunshot wound to Trooper Eales's chest. Yet in *Barrett,* we continued to apply our long-held rule that multiple underlying offenses can

-12-

support separate § 924(c) charges so long as double jeopardy is not implicated.  *Id.* at 1096 (citing *Sturmoski*, 971 F.2d at 461); *accord Sandstrom*, 594 F.3d at 659 (upholding two § 924(c) convictions arising from a single gunshot because "the defendants 'used' the firearm at issue in both counts to commit separate offenses, even though the offenses occurred simultaneously").  The principle of stare decisis compels us to do the same here and hold, as in *Barrett*, that multiple § 924(c) charges are permissible so long as the underlying violent or drug-trafficking offenses are separate for double jeopardy purposes.[7]

### 3.  **Whether the Underlying Crimes Violate Double Jeopardy**

Because we conclude that § 924(c) can support multiple charges arising from a single act, we must now decide whether Mr. Rentz's underlying charges—murder and

---

[7] We note that *Barrett* arose from a constitutional double jeopardy challenge.  496 F.3d at 1095.  But the court's decision includes statutory construction of § 924(c).

The court in *Barrett* framed the question presented as whether the two § 924(c) counts "were based on a single 'unit of prosecution.'"  *Id.*  Supreme Court precedent indicates that the "unit of prosecution" is a matter of statutory interpretation.  The Court has recognized that Congress "define[s] a statutory offense by its prescription of the 'allowable unit of prosecution'. . . . Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this congressional choice."  *Sanabria v. United States*, 437 U.S. 54, 69-70 (1978); *see also Bell v. United States*, 349 U.S. 81, 81 (1955) (describing the "unit of prosecution" issue as a matter of statutory construction).  Because we said in *Barrett* that we were determining the unit of prosecution, it follows that *Barrett* addressed the statutory construction of § 924(c).

In *Malone*, 222 F.3d 1286, we concluded that our prior cases—including *Sturmoski* and *Chalan*—implicitly held that as a matter of statutory interpretation, § 924(c) allows for multiple firearm charges arising from a single course of conduct.  *Id.* at 1292-93.  Because *Barrett* linked the § 924(c) unit of prosecution to the double jeopardy analysis, it implied that § 924(c) itself permits multiple charges arising from a single use of a firearm.

assault resulting in serious bodily injury—violate double jeopardy. We conclude they do not.

The Fifth Amendment Double Jeopardy Clause provides that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It protects criminal defendants "against multiple punishments for the same offense imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (quotations omitted). In this case, convictions under the criminal statutes for murder and assault causing serious bodily injury would both punish Mr. Rentz for firing his gun once. We must decide "whether Congress intended multiple convictions and sentences under the statutes." *United States v. Morehead*, 959 F.2d 1489, 1506 (10th Cir. 1992). When, as here, Congress has not specified that a defendant can be charged under both the murder and assault-causing-serious-bodily-injury statutes for the same conduct, "we apply the well-settled 'rule of statutory construction'" from *Blockburger v. United States*, 284 U.S. 299 (1932). *Morehead*, 959 F.2d at 1506.

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions," the *Blockburger* test asks "whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. "Because we must assume that Congress legislated with *Blockburger* in mind, we presume, absent express Congressional intent to the contrary, that Congress intended multiple convictions and sentences for the same criminal behavior which violates more than one statute when each statute requires proof of a fact that the other does not." *Morehead*, 959 F.3d at 1506

-14-

(citation omitted). We focus on the statutory elements of each offense, "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Ianelli v. United States*, 420 U.S. 770, 785 n.17 (1975).

The offenses underlying Mr. Rentz's firearm charges are separate under the *Blockburger* test. Count I charges Mr. Rentz with second degree murder[8] while within Indian country, in violation of 18 U.S.C. §§ 1111 and 1153(a). The elements of second degree murder require proof that (1) the defendant caused the death of the victim; (2) the defendant killed the victim with malice aforethought; and (3) the killing took place within the territorial Indian country jurisdiction of the United States under 18 U.S.C. § 1153. Tenth Circuit Pattern Criminal Jury Instructions Criminal § 2.53, at 181 (2011) (Murder in the Second Degree). Count IV charges Mr. Rentz with assault resulting in serious bodily injury while within Indian country in violation of 18 U.S.C. §§ 113(a)(6) and 1153(a). The elements of that offense require proof that (1) the defendant knowingly assaulted the victim; (2) the assault caused serious bodily injury to the victim; and (3) the assault took place within Indian country jurisdiction under § 1153. *See* 18 U.S.C.

---

[8] The Indictment charges Mr. Rentz with having "unlawfully killed Tedrick Francis with malice aforethought while within Indian country." Appx. at 17. 18 U.S.C. § 1111 enumerates categories of murder that constitute murder in the first degree. "Any other murder is murder in the second degree." *Id.* Because Mr. Rentz is not charged with any of the enumerated categories of first degree murder, we examine the elements of second degree murder here. The Government also focuses on second degree murder in its opening brief. Aplt. Br. at 8.

§ 113(a)(6); *see also United States v. Benally*, 146 F.3d 1232, 1237-38 (10th Cir. 1998) (assault under § 113(a)(6) is a general intent crime).

Each underlying offense in this case requires proof of an element that the other does not. Count I requires proof that Mr. Rentz caused the death of Mr. Francis with malice aforethought. Count IV, on the other hand, requires proof that Mr. Rentz knowingly assaulted Mr. Dawes, causing him serious bodily injury. *See United States v. Good Bird*, 197 F.3d 1203, 1204-05 (8th Cir. 1999) (holding that assault resulting in serious bodily injury and second degree murder are "completely separate" offenses for double jeopardy purposes, even though both crimes involved the same victim.); *cf. Diaz v. United States*, 223 U.S. 442, 448-49 (1912) (holding that double jeopardy was not implicated when a defendant was tried for assault, then subsequently tried for murder after the victim of the assault passed away a few weeks later). The two underlying charges therefore satisfy the *Blockburger* test and do not implicate double jeopardy. And because Mr. Rentz's murder and assault charges are separate, we must hold that both § 924(c) counts are proper.

## 4. **District Court Analysis**

We address briefly the district court's four reasons for holding that § 924(c) cannot support multiple charges arising from a single use of a firearm. First, it referred to extra-circuit cases holding that each § 924(c) count must be predicated on a separate use of a firearm and mentioned a Second Circuit case, *Finley*, 245 F.3d at 206, as an example. Second, it said "that the statute and its language presupposes a second action"

-16-

every time a new § 924(c) charge attaches. Third, it reasoned that the "logic of applying a deterrent" counsels in favor of requiring a separate act for each § 924(c) charge. Finally, it applied the rule of lenity to interpret the statute in Mr. Rentz's favor. *See* Appx. at 59.[9]

### a. *Precedent*

The district court erred by failing to apply Tenth Circuit precedent. Although other circuits have interpreted § 924(c) to permit only one firearm charge when a defendant has used a firearm once, we have held to the contrary, as explained above.

### b. *Statutory Language*

The district court's statement that "the statute and its language presupposes a second action," Appx. at 59, meaning that a second use of a firearm is required before a second § 924(c) count can be charged, may find support in the "uses . . . a firearm" phrase in the statute. But as we have explained, the phrase "during and in relation to any crime of violence" suggests that Congress intended to allow a separate § 924(c) firearm charge connected to each underlying violent or drug-trafficking offense. Tenth Circuit precedent supports this latter interpretation.

### c. *Deterrence*

---

[9] Although the Government's opening brief does not contain arguments regarding deterrence and the rule of lenity, Mr. Rentz invited the Government's reply to these issues in his own brief.

The district court said: "I believe that, consistent with the intent of Congress, that this act is a deterrent. If you're talking about a single act, the logic of applying a deterrent does not apply." Appx. at 59. Although we agree that § 924(c) was enacted "to deter the use of firearms in connection with the commission of federal felonies," *United States v. Lanzi*, 933 F.2d 824, 826 (10th Cir. 1991), allowing multiple § 924(c) charges to arise from a single use of a firearm, including in this case, is consistent with that purpose. The possibility of facing multiple § 924(c) charges can and should deter an offender from firing his or her gun in the direction of two or more people.

d. *Rule of Lenity*

The district court's rule of lenity rationale, Appx. at 59, again runs afoul of our precedent. The Supreme Court recently confirmed that the rule applies when there is "grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Maricich v. Spears*, 133 S. Ct. 2191, 2209 (2013) (quotation and citation omitted); *see United States v. Serawop*, 505 F.3d 1112, 1122-23 (10th Cir. 2007). Our cases provide much more than a "guess." *United States v. Barrett* in particular holds that the two § 924(c) charges are permissible here.

## III. **CONCLUSION**

The district court failed to apply Tenth Circuit precedent when it dismissed Count VI of the Indictment. We have repeatedly held that 18 U.S.C. § 924(c) can give rise to multiple charges arising from a single criminal episode, so long as the underlying offenses can be charged without violating double jeopardy. As the *Barrett* case

-18-

demonstrates, this rule applies in cases such as this one where two § 924(c) charges and their underlying offenses arise from a single gunshot. For the foregoing reasons, the order of the district court is reversed.