HARTZ, Circuit Judge,
concurring:
I join the concurrence of Judge Matheson. I add a few words, however, to elaborate further on why I believe the government’s arguments are rather strong, although not strong enough to overcome the rule of lenity.
As I read the words of 18 U.S.C. § 924(c)(1)(A) in isolation, they lend themselves most readily to the government’s interpretation. The operative language for this case is as follows: “[A]ny person who, during and in relation to any crime of violence ..., uses ... a firearm, ... shall, in addition to the punishment provided for such crime of violence ... be sentenced to a term of imprisonment of not less than 5 years.” This statutory language looks like a typical sentence-enhancement provision. And the focal point is the sentence for a crime of violence. The statute simply tells the court when to increase that sentence. When the defendant has been convicted of a crime of violence, add five years to the sentence if the defendant used a firearm during and in relation to that crime of violence. The enhancement would be imposed the same as an enhancement for an offense in which the victim was elderly or the offense was committed with a bigoted motive. The court’s only concern about the unit of prosecution would be with how many crimes of violence had been committed. Once that is determined, the court simply increases the sentence for any of those crimes where the defendant used a firearm during and in relation to the crime.
*1116 This interpretation could lead to some harsh results. If, as in this case, the defendant committed two crimes of violence by performing a single act (pulling the trigger only once), his total sentence could be increased by 10 years under § 924(c)(1)(A), because there would be a five-year increase to each sentence for a crime of violence. This harshness, however, is less the result of anything peculiar in § 924(c)(1)(A) than of the fact that the single act can be prosecuted as multiple crimes of violence. If there is any unit-of-prosecution issue, it arises solely from the government’s opportunity to have a defendant charged, convicted, and sentenced for two distinct crimes of violence arising from the single physical act.
But § 924(c) is not a sentence-enhancement provision. As the Supreme Court recognized in Rosemond v. United States, — U.S.-, 134 S.Ct. 1240, 1247-48, 188 L.Ed.2d 248 (2014), it creates a criminal offense. After all, § 924(c)(1)(B) speaks of “a person convicted of a violation of this subsection.” And because it is a criminal offense, it is important to analyze the statute to determine the unit of prosecution, which is not necessarily the same as the number of distinct crimes of violence. In performing the analysis, one must still take account of the language in § 924(c)(1)(A), with its focus on increasing each crime-of-violence sentence. Nevertheless, in my view the unit of prosecution in the case before us is uncertain. Yes, an offense carrying a five-year sentence can be charged for each crime of violence. But can one sentence under § 924(c)(1)(A) serve double duty — satisfying the requirement that the punishment for each crime of violence be increased by five years— when one physical act constitutes two crimes of violence? Here, for example, Mr. Rentz committed murder and assault with one pull of the trigger. In addition to the charge of murder he can be charged under § 924(c)(1) with a further offense that can add a five-year sentence to the sentence for murder; and the same can be done for the assault charge. But the statute is silent on whether a single conviction (a single five-year sentence) under § 924(c)(1)(A) can satisfy the requirement that the sentence be increased for each of the two crimes of violence. Just as it is silent on whether under § 924(c)(1)(C) (“In the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years.”) one conviction under § 924(c)(1)(A) is “subsequent” to another if both arose from the same physical act. But cf. Deal v. United States, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (when defendant convicted at one proceeding of six offenses under § 924(c) committed on different dates, five of the convictions were subsequent convictions under § 924(c)(1)(C)). Put another way, the statute does not explicitly address how § 924(c)(1) operates when one physical act in using a firearm causes two crimes of violence. Given the extraordinary consequences that could befall a defendant, we should not assume that Congress intended the harshest possible consequence. I need not engage in further discussion, because Judge Matheson’s opinion establishes the ambiguity of the statute as applied to our unusual circumstance here.
MATHESON, Circuit Judge,
concurring, joined by BRISCOE, HARTZ, and PHILLIPS, Circuit Judges.
After Philbert Rentz fired a single gunshot that wounded one victim and killed another, he was charged with two crimes of violence — assault and murder — and two counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Mr. Rentz moved to dismiss the second § 924(c) count. The district court granted his motion, holding that multiple § 924(c) charges arising from a single use of a firearm are impermissible. The Govern *1117 ment appealed the pre-trial dismissal of the second § 924(c) count. A panel of this court, exercising jurisdiction under 18 U.S.C. § 3731 and relying on Tenth Circuit precedent, reversed the district court order. This court then granted en banc rehearing to determine whether Mr. Rentz can be charged with two § 924(c) offenses for using a gun only once. On en banc review, I concur he cannot be so charged.
The following discusses (1) the difference between the elements of an offense and the unit of prosecution, (2) the overlap between double jeopardy and the unit of prosecution, (3) the ambiguity of 18 U.S.C. § 924(c) regarding the unit of prosecution, (4) application of the rule of lenity, and (5) the relation of this case to Tenth Circuit precedent. This discussion differs from the majority opinion in recognizing that charging two offenses based on one unit of prosecution violates double jeopardy, emphasizing § 924(e)’s ambiguity to a greater extent, relying solely on ambiguity and the rule of lenity to conclude only one § 924(c) charge should be allowed, and explaining how the en banc court is less constrained under Tenth Circuit case law than the panel was in deciding this issue.
1. Elements of the Offense and Unit of Prosecution
Courts consider the elements of a crime more often than a criminal statute’s unit of prosecution. The two can easily be confused but are conceptually distinct.
The elements of an offense define what must be proved to convict a defendant of a crime. There are two elements to a § 924(c) offense: the defendant must (1) “use[ ] or carr[y]” or “possess[ ]” a firearm (2) “during and in relation to any crime of violence or drug trafficking crime.” 18 U.S.C. § 924(c); see Rosemond v. United States, — U.S.-, 134 S.Ct. 1240, 1248, 188 L.Ed.2d 248 (2014) (“[Section] 924(c) is, to coin a term, a combination crime. It punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm.”); Smith v. United States, 508 U.S. 223, 227-28, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (“By its terms, the statute requires the prosecution to make two showings. First, the prosecution must demonstrate that the defendant ‘use[d] or carrie[d] a firearm.’ Second, it must prove that the use or carrying was ‘during and in relation to’ a ‘crime of violence or drug trafficking crime.’ ”).
By contrast, the unit of prosecution defines how many offenses the defendant has committed. It determines “whether conduct constitutes one or several violations of a single statutory provision.” Callanan v. United States, 364 U.S. 587, 597, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); see also Sanabria v. United States, 437 U.S. 54, 69-70, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (describing the “unit of prosecution” as a “congressional choice” determining “[w]hether a particular course of conduct involves one or more distinct ‘offenses’ under the statute”). For example, if the elements of an offense consist of at least two acts¡ X (e.g., use of a firearm) and Y (e.g., crime of violence), and in the same course of conduct the defendant has done X once and Y twice, then he or she has committed one crime if the unit of prosecution is X, two crimes if the unit of prosecution is Y, and one crime if the unit of prosecution is X and Y combined.[1]
*1118 The elements of the § 924(c) offense in this case are “use” and “crime of violence.” The candidates for unit of prosecution are “use,” “crime of violence,” or “use and crime of violence” in conjunction.[2] Regardless of what constitutes the unit of prosecution, the prosecution must prove both elements of the § 924(c) offense.
2. Section 924(c) and Double Jeopardy
The unit of prosecution is inextricably-tied to double jeopardy. As the following discussion shows, if Mr. Rentz’s alleged conduct violated only one § 924(c) unit of prosecution but the indictment charged him with two § 924(c) counts, the indictment would misapply the statute and violate double jeopardy.
The Fifth Amendment Double Jeopardy Clause provides that no person shall be “subject for the same offence to be twice put in jeopardy of life or limb.” U.S. Const, amend. V. “The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.” Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quotations omitted).
Relevant here, the Double Jeopardy Clause protects criminal defendants “against multiple punishments for the same offense imposed in a single proceeding.” Jones v. Thomas, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (quotations omitted). “[T]he role of the constitutional guarantee” in this context “is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.” Brown, 432 U.S. at 165, 97 S.Ct. 2221. In other words,
the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Dou *1119 ble Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense.

Id.

Double jeopardy questions of this nature can arise when (a) a defendant is charged under more than one statute covering the same conduct, or (b) a defendant is charged multiple times under the same statute for the same conduct. See Peter Westen & Richard Drubel, Toward a General Theory of Double Jeopardy, 1978 Sup. Ct. Rev. 81, 111. Both categories can arise in § 924(c) cases, though only the second is implicated in this case.
Determining whether double jeopardy is a problem in the first category of cases requires courts to apply the Blockburger test. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (“[Wjhere the same act or transaction constitutes a violation of two-distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.”).
The second category requires courts to determine the proper unit of prosecution. “[W]here two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the Bloekburger test, but rather by asking what act the legislature intended as the ‘unit of prosecution’ under the statute.” United States v. Weathers, 186 F.3d 948, 952 (D.C.Cir.1999); see also id. at 951-52 (noting “the Double Jeopardy Clause protects not only against a second prosecution for the same offense after acquittal or conviction, but also against, multiple punishments for the same offense” and considering the unit of prosecution in this context (quotations omitted)). Thus, a unit of prosecution analysis is a double jeopardy analysis.
When a defendant is charged with multiple violations of a single statute, the double jeopardy inquiry focuses on “whether Congress intended the facts underlying each count to make up a separate unit of prosecution.” United States v. Grimes, 702 F.3d 460, 468 (8th Cir.2012) (quotations omitted). So long as e'ach count is based on a separate unit of prosecution, multiple charges under a single statute are permissible. If multiple charges are based on the same single unit of prosecution, however, they run afoul of the Double Jeopardy Clause. See United States v. Woerner, 709 F.3d 527, 539 (5th Cir.2013) (“The second type of [double jeopardy] challenge arises when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct. In that circumstance, the court inquires whether separate and distinct prohibited acts, made punishable by law, have been committed.” (quotations omitted)).
“[Tjhe [Djouble [Jjeopardy [Cjlause imposes no restraints on the power of Congress to define the allowable unit of prosecution....” United States v. McDonald, 692 F.2d 376, 377 (5th Cir.1982). Therefore, our “sole question” in a unit-of-proser cution case is “whether Congress intended to provide for multiple punishments.” Id.; see also Sanabria, 437 U.S. at 69-70, 98 S.Ct. 2170 (“It is Congress, and not the prosecution, which establishes and defines offenses. Few; if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. But once Congress has defined a statutory offense by its prescription of the ‘allowable unit of prosecution,’ that prescription determines the scope of protection afforded by a prior conviction or acquittal.” (citations omitted)).
*1120 Thus, even if two underlying crimes of violence are separate under the Blockburger test, two § 924(c) charges'may nonetheless violate double jeopardy if they are based on the same unit of prosecution under the statute. The unit of prosecution by definition can support only one offense, and charging two § 924(c) offenses on a single unit would thus simultaneously misapply the statute and violate double jeopardy. This circuit has recognized as much, albeit in the context of a different statute. See United States v. Jackson, 736 F.3d 953, 956 (10th Cir.2013) (“[Ljenity limits § 2113(e) to only one unit of prosecution based on its ambiguity. Therefore, Mr. Jackson’s sentence for two violations of § 2113(e) arising from a single car accident in the course of a single bank robbery is violative of double jeopardy, and upon remand the district court should vacate one of the sentences.”).
No one contests the two crimes of violence here- — assault and murder — are two separate offenses under Blockburger. The contested issue is whether the language of § 924(c) can avoid a unit-of-prosecution double jeopardy problem and support two § 924(c) charges arising from a single use of a firearm causing two underlying crimes of violence, or whether each § 924(c) charge must be predicated upon a separate use of a firearm. ’
Whether charging two § 924(c) offenses based on the same conduct violates double jeopardy depends on what constitutes the unit of prosecution under § 924(c), which in turn depends on construing § 924(c) itself. See United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952) (explaining that determining the unit of prosecution under criminal statutes requires “construction of the criminal provisions”). I therefore turn next to a statutory construction of § 924(c).
3. Statutory Construction of § 924(c)
a. Text
Statutory construction begins with the text of the statute. See United States v. Handley, 678 F.3d 1185, 1189 (10th Cir.2012). As noted above, § 924(c) provides in relevant part, “[A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... uses ... a firearm ... shall, in addition to the punishment provided for such crime of violence,” be sentenced to an additional prison term. 18 U.S.C. § 924(c)(1)(A).
The Government argues the phrase “during and in relation to any crime of violence” defines the proper unit of prosecution. Id. (emphasis added); see Aplt. Suppl. Br. at 9 (“The structure of the statute shows that the applicability of § 924(c) does not depend on how many times a person uses, carries, or possesses a firearm, but rather how many offenses he commits with the firearm.”).[3] The Government cites to Rosemond v. United *1121 States, 134 S.Ct. at 1248-49, for the proposition that because a § 924(c) offense requires proof of both the use of a firearm and the commission of a crime of violence, this means that “[rjather than punishing ‘any use’ of a firearm during a crime of violence, Congress chose to punish the commission of ‘any crime of violence’ accomplished through the use of a firearm.” Aplt. Suppl. Br. at 8.
The Government’s interpretation finds some support in the text of the statute. In particular, the word “any” could suggest Congress intended to punish an armed offender with a separate § 924(c) count for each underlying violent crime. Similarly, the phrase “in addition to the punishment provided for such crime of violence” lends itself to the construction that a separate § 924(c) charge is to be applied on top of each underlying, antecedent crime of violence.[4]
The context of § 924(c) could also suggest the unit of prosecution is crime of violence. The machine gun clause of § 924(c), for example, states “if the firearm possessed ... is a machinegun ... the person shall be sentenced to a term of imprisonment of not less than 30 years.” 18 U.S.C. § 924(c)(1)(B)(ii) (emphasis added). “The employment of the word ‘the’ implies that Congress was thinking of the underlying drug crime or crime of violence .... Congress spoke in terms of the word ‘the’ because it did not regard as significant the number of times guns, or the number of guns that were carried or used during and in relation to the predicate crime.” United States v. Anderson, 59 F.3d 1323, 1327 (D.C.Cir.1995) (en banc).[5]
In contrast, Mr. Rentz argues the text of § 924(c) is ambiguous as to the unit of prosecution. Although “during and in relation to any crime of violence” might suggest that the proper unit of prosecution is a single underlying offense, the competing phrase “uses or carries a firearm” suggests the number of firearm uses defines the number of offenses under the statute.
I agree with the majority in recognizing the verb form of “uses or carries” is a “clue” to the appropriate unit of prosecution. Maj. Op. at 1120. But this clue is not dispositive. See United States v. Rodriguez-Moreno, 526 U.S. 275, 280, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) (“[W]e have never before held, and decline to do so here, that verbs are the sole consideration in identifying the conduct that constitutes an offense. While the ‘verb test’ certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language.”).
Alternatively, although neither party has argued this, the language of § 924(c) could suggest the. unit of prosecution should be defined by each underlying crime of violence combined with each use of a firearm. See United States v. Cureton, 739 F.3d 1032, 1043 (7th Cir.2014); United States v. Phipps, 319 F.3d 177, 185-86 (5th Cir.2003). The majority’s analysis supports this interpretation, noting the “adverbial prepositional phrases modify the verbs uses, carries, and possesses” and serve as further “clues,” “tell[ing] us which acts of *1122 using, carrying, or possessing Congress sought to punish.” Maj. Op. at 1120-21. The verbs, modified by the adverbial prepositional phrases, suggest each § 924(c) charge “must involve both an act of using, carrying, or possessing and that such an act must come during and in relation to (or in furtherance of) a qualifying crime.” Id. at 1121.[6]
Given these various interpretations of the statute, I agree with Mr. Rentz that the language of § 924(c) is unclear. Indeed, “[t]here is a widely-shared view that the statute’s text is ambiguous.” United States v. Finley, 245 F.3d 199, 207 (2d Cir.2001). Of the five circuits aside from our own that have addressed whether the unit of prosecution under § 924(c) permits multiple charges arising from a single use, four have found the statute to be unclear on this score. See Cureton, 739 F.3d at 1044; Phipps, 319 F.3d at 186; Finley, 245 F.3d at 207; United States v. Wilson, 160 F.3d 732, 749-50 (D.C.Cir.1998). But see United States v. Sandstrom, 594 F.3d 634, 658-59 (8th Cir.2010) (holding “multiple underlying offenses support multiple § 924(c)(1) convictions”).
Rosemond does not shed light on the proper unit of prosecution under § 924(c), as the majority aptly explains. The Supreme Court’s focus in Rosemond was limited to whether the defendant in that case had furthered an element of the § 924(c) charge, regardless of whether that element was the unit of prosecution. See 134 S.Ct. at 1247-48. Rosemond gives us no guidance on which element or elements define the unit of prosecution under § 924(c).
I therefore agree with the majority of circuits that § 924(c) does not “unambiguously authorize[ ] multiple convictions for a single use of a single firearm during and in relation to multiple predicate offenses.” Phipps, 319 F.3d at 186.
b. Legislative History and Public Policy
When a statute is ambiguous on its face, “we look to the legislative history and the underlying public policy of the statute” to assist in our statutory construction. Handley, 678 F.3d at 1189 (quotations omitted). In this instance, the legislative history and public policy rationale behind § 924(c) offer little assistance.
i. Legislative history
The legislative history of § 924(c) is both meager and muddled. See United States v. Diaz, 592 F.3d 467, 473-74 (3d Cir.2010); Anderson, 59 F.3d at 1338 (Ginsburg, J., dissenting). I wish to add to the majority’s discussion of the 1983 Senate Report No. 98225.
The predecessor to the current version of the statute was first adopted as part of the Gun Control Act of 1968. The legislative history of that Act is limited to floor debates, as it does not contain any committee reports or congressional hearings. See Wendy Biddle, Let’s Make a Deal: Liability for “Use of a Firearm” When Trading Drags for Guns Under 18 U.S.C. § 924(c), 38 Val. U.L.Rev. 65, 68-69 (2003); see also United States v. Chalan, 812 F.2d 1302, 1317 (10th Cir.1987) (characterizing the legislative history of the original version of § 924(c) as “exceedingly sparse”). The legislative history “thus provides only murky insight into Congress’ intent.” In re Mile Hi Metal Sys., Inc., 899 F.2d 887, 895 (10th Cir.1990) (Seymour, J., concur *1123 ring) (describing another statute for which there are no committee reports and only “contradictory floor statements by members of the House and Senate”); see also Kenna v. U.S. Dist. Court for C.D. Cal., 435 F.3d 1011, 1015 (9th Cir.2006) (“Floor statements are not given the same weight as some other types of legislative history, such as committee reports, because they generally represent only the view of the speaker and not necessarily that of the entire body.”).
Even among the relatively unauthoritative floor statements concerning the original version of § 924(c), very few even appear to concern the proper unit of prosecution under the statute.
In his statement sponsoring the original version of § 924(c), Representative Poff declared that the purpose of the offense is “to persuade the man who is tempted to commit a Federal felony to leave his gun at home.” 114 Cong. Rec. 22,231 (1968).
Senator Mansfield, who sponsored the original amendment to § 924(c) adding a heightened sentence for a second conviction under the statute, stated that the law “provides for the first time a separate and additional penalty for the mere act of choosing to use or carry a gun in committing a crime under Federal law. If that choice is made more than once, the offender can in no way avoid a prison sentence regardless of the circumstances.” 115 Cong. Rec. 34,838 (1969).
These two statements might lend some limited support for treating the number of firearm uses as the unit of prosecution. See Anderson, 59 F.3d at 1328 (noting that Senator Mansfield’s emphasis on the “act of choosing to use or carry a gun ” might imply that § 924(c) “punishes one and only one crucial decision” — i.e., the decision to use a firearm during and in relation to the commission of a crime of violence or drug trafficking offense).
At the same time, however, Representative Poffs and Senator Mansfield’s statements are themselves ambiguous. See Phipps, 319 F.3d at 186-87 (citing the two statements but finding the statute did not unambiguously resolve whether multiple § 924(c) charges were permissible). Representative Poffs focus on “the man who is tempted' to commit a Federal felony” shifts emphasis away from the use of the firearm and toward the commission of the underlying crime. 114 Cong. Rec. at 22,-231 (emphasis added); see Diaz, 592 F.3d at 474 (concluding Representative Poffs statement is not “enlightening” as to the unit of prosecution). Senator Mansfield meanwhile, cabins his focus on “the act of choosing to use or carry a gun” by adding the modifying phrase “in committing a crime under Federal law,” 115 Cong. Rec. at 34,838, which could be read as suggesting both the firearm and the underlying crime together constitute the unit of prosecution.
The later amendment history of § 924(c) is likewise of little assistance. Mr. Rentz argues that Congress’s failure to clarify the unit of prosecution in § 924(c) itself after circuit courts applied the rule of lenity, as will be explained below, indicates congressional intent to conform to those circuits’ interpretations of the statute. Aplee. Suppl. Br. at 16-17 (citing Harrison v. PPG Industries, Inc., 446 U.S. 578, 602, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) (Rehnquist, J., dissenting) (“In a case where the construction of legislative language such as this makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night.”)).
I am unconvinced, however, that Congress’s silence in response to a few circuit court decisions applying the rule of lenity to an ambiguous statute equates to its tacit *1124 adoption of an interpretation of the unit of prosecution under § 924(c). Although we presume Congress is aware of judicial interpretations, see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), its failure to respond to these interpretations is not necessarily indicative of congressional intent to adopt them.
In short, the legislative history of § 924(e) provides scant clues as to whether Congress intended the statute to apply twice when a defendant has used a gun once to commit two underlying offenses. Any inferences we may draw from the legislative history are tenuous at best. A few floor statements providing limited support for different readings of the statute cannot cure § 924(c) of its ambiguity.
ii. Public policy
Public policy considerations based on legislative purpose are likewise unhelpful in resolving § 924(c)’s ambiguity.
Section 924(c) was enacted “to deter the use of firearms in connection with the commission of federal felonies.” United States v. Lanzi, 933 F.2d 824, 826 (10th Cir.1991). Based on the statute’s deterrence rationale, the district court in this case seemed to suggest that a single § 924(c) charge would be sufficient to serve the statute’s purposes: “I believe that, consistent with the intent of Congress, that this act is a deterrent. If you’re talking about a single act, the logic of applying a deterrent does not apply.” App. at 59.
But the deterrence rationale may point the other way. Allowing multiple § 924(c) charges to arise from a single use of a firearm, including in this case, could also be consistent with a deterrence rationale. The possibility of facing multiple § 924(c) charges can and should deter an offender from firing his or her gun in the direction of two or more people.
Thus, the deterrence policy underlying § 924(c) does not resolve the statute’s textual ambiguity.[7]
4. Rule of Lenity
Based on the rule of lenity and this court’s review of the issue en banc, I apply § 924(c) in Mr. Rentz’s favor and conclude that two § 924(c) charges based on a single use of a firearm causing two crimes of violence are impermissible. This conclusion is in line with most circuits to have considered the narrow issue presented in this case.
The majority applies the rule of lenity “[t]o the extent any ambiguity remains ... about the meaning of § 924(c)(1)(A).” Maj. Op. at 1113. As the foregoing indicates, I discern greater ambiguity as to § 924(c)’s unit of prosecution than this statement suggests. The following discussion (a) applies the rule of lenity to this case and (b) describes how other circuits *1125 have applied the rule of lenity in § 924(c) cases.
a. Lenity applied to this case
The rule of lenity provides that “if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.” Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955). The Supreme Court recently explained that “ ‘[t]he simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree.’ ” Dean v. United States, 556 U.S. 568, 577, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009) (quoting Muscarello v. United States, 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998)). Indeed, “[a] statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction.” Reno v. Koray, 515 U.S. 50, 64-65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (quotations omitted).
Instead, the rule of lenity applies only if there is “grievous ambiguity or uncertainty in the statute.” Dean, 556 U.S. at 577, 129 S.Ct. 1849 (quotations omitted). An ambiguity is grievous only if “after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.” Muscarello, 524 U.S. at 138, 118 S.Ct. 1911 (alterations and quotations omitted).[8]
Section 924(c) is sufficiently ambiguous as to its unit of prosecution to warrant rule-of-lenity application. As explained above, the text of the statute is unclear, and the meager legislative history sheds little light on whether Congress intended to permit multiple § 924(c) convictions when a defendant has fired a gun only once but has thereby committed two crimes of violence. Apart from United States v. Barrett, 496 F.3d 1079 (10th Cir.2007), which will be considered below, we have no clear Tenth Circuit precedent to guide us on this issue and therefore are left with “no more than a guess” as to whether Congress intended Mr. Rentz to face one § 924(c) charge or two. Muscarello, 524 U.S. at 138, 118 S.Ct. 1911 (quotations omitted); see United States v. Jones, 841 F.2d 1022, 1023 (10th Cir.1988) (“When the intent of Congress as to the unit of prosecution cannot be clearly discerned, doubt must be resolved in favor of lenity.” (alterations and quotations omitted)).
The Supreme Court has applied the rule of lenity in cases analogous to ours, as the majority opinion discusses. See Ladner v. United States, 358 U.S. 169, 173-78, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (finding the unit of prosecution in 18 U.S.C. § 254 to be ambiguous and thus applying the rule of lenity to hold only one charge was permissible in the case of a single discharge of a shotgun that wounded two officers); Bell, 349 U.S. at 83, 75 S.Ct. 620 (finding the unit of prosecution in the Mann Act to be ambiguous and thus applying the rule of lenity to hold only one violation of the Act could be charged).
Lenity is especially fitting in this case because of the harsh sentencing disparity between one and two § 924(c) charges. If convicted on both § 924(c) counts, Mr. Rentz would face an additional 25 years in prison on top of a mandatory minimum of 10 years. See 18 U.S.C. § 924(c)(l)(A)(iii), (C)(i). And, as the majority opinion shows, the Government’s arguments to the contrary — -based on congressional intent to punish harshly — are unavailing.
*1126 Doubt about the unit of prosecution, as the Supreme Court has instructed, is resolved “against turning a single transaction into multiple offenses.” Bell, 349 U.S. at 84, 75 S.Ct. 620. Insofar as the elements of a § 924(c) offense are concerned, the government must prove both the use, carrying, or possession of a firearm as well as a qualifying crime. But we need not decide the unit of prosecution other than to join our sibling circuits in recognizing it is ambiguous under § 924(c) and to state that the rule of lenity permits only one § 924(c) charge in a case like ours, where there is only one use but two crimes of violence.
b. Lenity in other circuits
This analysis and conclusion are consistent with the majority of circuits to address the issue of multiple § 924(c) charges arising from a single use.
In United States v. Wilson, the D.C. Circuit held that a defendant could not be convicted of two § 924(c) charges for the single use of a firearm to commit the crimes of first degree murder and the killing of a witness to prevent him from testifying. 160 F.3d at 749-50 & n. 20. The D.C. Circuit applied the rule of lenity to the “ambiguous” language in § 924(c)(1) and concluded that only one § 924(c) charge could result from a case involving “only one firearm and one use, but two underlying offenses.” Id. at 749.
Similarly, in United States v. Finley, the Second Circuit applied the rule of lenity to vacate one of two § 924(c) convictions where a defendant was charged with “continually possessing]” a firearm in connection with possession of a drug with intent to distribute and distribution of the drug. 245 F.3d at 206-07. The Second Circuit reasoned that the rule of lenity had to apply because “[t]here is a widely-shared view that the statute’s text is ambiguous.” Id. at 207 (citing Anderson, 59 F.3d at 1333). The Second Circuit also pointed to the statute’s deterrence rationale as supporting one § 924(c) charge per choice to use a firearm. See id. (citing 115 Cong. Rec. at 34,838 (statement of Sen. Mansfield)). The Second Circuit later reiterated this conclusion in United States v. Wallace, 447 F.3d 184, 188 (2d Cir.2006), which struck down one of two § 924(c) counts after the defendants committed two predicate drug offenses in a single drive-by shooting. See id. (citing Finley’s application of the rule of lenity as support for the conclusion that both § 924(c) offenses were based on the same unit of prosecution).[9]
*1127 In United States v. Phipps, the Fifth Circuit held that the proper unit of prosecution under § 924(c) is a single use of a firearm in connection with a single offense. 319 F.3d at 184. The Fifth Circuit decided that it was unclear how this unit of prosecution should apply, however, in a case where the defendants were charged with multiple counts of § 924(c) based on predicate offenses of kidnapping and carjacking arising from a single incident. Id. at 186. It therefore applied the rule of lenity and concluded that only one § 924(c) charge is proper where two predicate offenses arise from a single use. Id. at 186-88.
Finally, in the recent case of United States v. Cureton, the Seventh Circuit held that when a defendant has “used a firearm once, in the simultaneous commission of two predicate offenses, ... he may only stand convicted of one violation of § 924(c).” 739 F.3d at 1043. The court invoked the Supreme Court’s rule of lenity in Bell, id. at 1040-41 (citing Bell, 349 U.S. at 82, 84, 75 S.Ct. 620), and followed the Second, Fifth, and D.C. Circuits, which relied on ambiguity and lenity, id. at 1043. It said “the unit of prosecution is the use, carriage, or possession of a firearm during and in relation to a predicate offense,” id., and saw “no clear indication that Congress intended more than one § 924(c)(1) punishment” in these circumstances, id. at 1044.
The sole outlier among circuits is now the Eighth Circuit, whose decision in United States v. Sandstrom upheld two § 924(c) convictions arising from a single gunshot. 594 F.3d at 656-59. In Sandstrom, the death of one victim gave rise to two underlying offenses: shooting a victim because of his race and killing a victim to prevent him from reporting a crime to law enforcement. Id. at 656-57. The Eighth Circuit held that the two § 924(c) counts in that case were “distinguishable from one another because the defendants ‘used’ the firearm at issue in both counts to commit separate offenses, even though the offenses occurred simultaneously.” Id. at 659.
Because' only one of the five circuits to have addressed this question has concluded that § 924(c) unambiguously authorizes multiple charges arising from a single use, we cannot say that Congress has established the unit of prosecution in this case “clearly and without ambiguity.’* Bell, 349 U.S. at 84, 75 S.Ct. 620. I therefore agree with the majority of circuits that have held multiple § 924(c) charges impermissible when a defendant commits multiple crimes of violence or drug trafficking crimes but only uses a firearm once.
5. Tenth Circuit Precedent
Finally, I- wish to discuss United States v. Barrett, which upheld two § 924(c) convictions based on a single gunshot that caused two crimes of violence. 496 F.3d 1079.
In its brief oral ruling, the district court granted Mr. Rentz’s pre-trial motion and dismissed one of the two § 924(c) counts in the indictment, holding that § 924(c) does not permit multiple charges arising from a single use of a firearm.
*1128 A three-judge panel of this court initially reversed the district court’s dismissal of one of the § 924(c) counts. See United States v. Rentz, 735 F.3d 1245, 1247 (10th Cir.2013). It observed the district court had ignored Tenth Circuit precedent-in particular, Barrett. Id. at 1251-52. The panel upheld the two § 924(c) charges based on a single use of a firearm as consistent with Barrett. See id. at 1252 & n. 7.
In Barrett, we upheld two § 924(c) counts based on a single gunshot causing two distinct crimes of violence. 496 F.3d at 1082, 1095-96. Kenneth Barrett was involved in a shoot-out with police officers executing a search warrant on his home for methamphetamine and other evidence of drug-trafficking crimes. Id. at 1082-85. Trooper David Eales of the Oklahoma Highway Patrol’s Tactical Team was struck by three gunshots from “continuous gunfire” as he emerged from a vehicle at Mr. Barrett’s residence. Id. at 1084-85. A later crime scene investigation determined that Mr. Barrett had fired approximately 19 shots at law enforcement officers. Id. at 1085. Three of these shots hit Trooper Eales — one in his chest, one in his flank, and one in his arm. Id. The gunshot wound to the chest struck Trooper Eales’s aorta, and this injury was determined to be the cause of his death. Id.
Mr. Barrett was convicted of two counts in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j):[10] using a firearm during and in relation to the underlying offenses of (1) “several drug-trafficking crimes [that re-suited] in the death of a state law enforcement officer” and (2) “the killing of a state law enforcement officer engaged in or on account of the performance of such officer’s duties.” Id. at 1082. He was not separately charged with the offenses underlying these two counts. Id. at 1093-94. To convict him on both § 924(c) counts, however, the jury was required to find that Mr. Barrett had “committed at least one underlying offense with respect to each Count 1 and 2.” Id. at 1094.
Although Mr. Barrett fired multiple shots, the same single gunshot — the fatal shot to Trooper Eales’s chest — produced both predicate offenses underlying Mr. Barrett’s two § 924(c) charges.[11] The first § 924(c) count required proof that Mr. Barrett “committed one or more of the predicate drug-trafficking offenses” and that “in the course of using the firearm Barrett killed Eales.” Id. at 1095. The second § 924(c) count required the Government to prove that Barrett committed the predicate offense of killing a state law enforcement officer engaged in his duties. Id. at 1095-96. Although Mr. Barrett fired a stream of shots, only the single fatal shot to Trooper Eales’s chest satisfied the required elements of both § 924(c) offenses.
Both types of double jeopardy issues discussed above — Blockburger and unit of prosecution — arose in Barrett.
First, as to Blockburger, the Barrett panel, reviewing only for plain error,[12] began by discussing Tenth Circuit precedent on the subject of multiplicity. Id. at 1095. *1129 Relying on United States v. Sturmoski, 971 F.2d 452, 461 (10th Cir.1992), the panel then held that Counts 1 and 2 charging § 924(c) offenses were ' both proper because Mr. Barrett’s underlying offenses— (1) “several drug-trafficking crimes [that resulted] in the death of a state law enforcement officer” and (2) killing a state law enforcement officer — were distinct under the Blockburger analysis. Barrett, 496 F.3d at 1082, 1095-96.
Second, the Barrett panel asked whether the two § 924(c) counts “were based on a single ‘unit of prosecution.’” Id. at 1095. As explained above, the “unit of prosecution” issue is a matter of statutory interpretation and double jeopardy. See Sanabria, 437 U.S. at 69-70, 98 S.Ct. 2170. The Barrett opinion does not, however, contain a detailed statutory analysis of § 924(c). Instead, the panel reasoned that “[b]eeause the crimes underlying Count 1 are distinct from the crime underlying Count 2, the two § 924(c) counts are in turn considered distinct.” Barrett, 496 F.3d at 1096. In other words, the Barrett court first noted that the underlying crimes of the two § 924(c) offenses were separate under Blockburger, it then extended that conclusion to the two § 924(c) offenses, finding that they were separate for double jeopardy purposes.
Based on the foregoing explanation of how double jeopardy concerns operate in the § 924(c) context, the result in Barrett — upholding two § 924(c) counts based on a single gunshot and two crimes of violence — can only be understood as considering “crime of violence” to be the unit of prosecution under the statute. If the unit of prosecution were the use of a firearm, or the distinct use of a firearm paired with a distinct crime of violence, the result in Barrett could not stand, because the two § 924(c) counts would be based on the same unit of prosecution and therefore violate double jeopardy.
For these reasons, the panel decision in this case concluded that despite Barrett’s lack of traditional statutory analysis, Barrett implicitly indicated that § 924(c) allows for multiple firearm charges from a single use. Relying on this understanding, the panel concluded, “The principle of stare decisis compels us to ... hold, as in Barrett, that multiple § 924(c) charges are permissible so long as the underlying violent or drug-trafficking offenses are separate for double jeopardy purposes.” Rentz, 735 F.3d at 1252. Because the panel decided that Mr. Rentz’s underlying charges — murder and assault — were separate under the Blockburger test, see id. at 1253-54, and because the panel understood the unit of prosecution under Barrett to be a crime of violence, the panel reversed the district court’s dismissal of the second § 924(c) charge.[13]
*1130 This court’s en banc decision holds that multiple § 924(c) charges based on a single firearm use are not permissible. The result in Barrett as to the § 924(c) charges in that case. is not consistent with that holding. Whether or not Barrett should have constrained the panel in this case as a precedent, it does not control the en banc court’s decision on the issue presented in this appeal.[14]
Conclusion
Because § 924(c) does not unambiguously authorize both § 924(c) counts in this case, I agree we should vacate the panel decision, affirm the district court, and remand.

. To provide a more concrete example, the federal stalking statute makes it a crime when a defendant, “with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses ... any ... facility of interstate or foreign commerce to engage in a course of conduct that” causes the victims to fear for themselves or their family. 18 U.S.C. § 2261A(2) (emphasis added). The statute thus has several elements, including
*1118 (1) the intent to harm a particular victim and
(2) a course of conduct.
In United States v. Shrader, 675 F.3d 300, 313 (4th Cir.2012), the Fourth Circuit held that "18 U.S.C. § 2261A(2) unambiguously makes the victim, rather than the course of conduct, the unit of prosecution.”
The defendant in Shrader was charged with two counts of stalking under the statute for engaging in a single course of conduct that harassed and intimidated a victim and her husband. Id. at 302-05. The defendant argued he should have been charged with only one count because he only engaged in one course of conduct. Id. at 313.
The Fourth Circuit disagreed, holding that the plain language of the statute makes the unit of prosecution the victim. Specifically, the Fourth Circuit noted that the “statute does not punish fungible acts, such as possession of cocaine in two different receptacles, but rather defines the defendant’s crime — and therefore the unit of prosecution — in terms of his intent to strike fear in a particular individual.” Id. (citation omitted). The court also pointed out the requirement that the defendant’s intimidating conduct induce fear in the victim is "more than just an element of the crime — the effect on a particular victim is also how Congress has chosen to allocate punishment for the offensef,] ... provid[ing] a scale of punishments depending on the gravity of the harm” to the victim. Id. (citing 18 U.S.C. § 2261(b)).
Accordingly, both stalking charges in Shrader were permissible, because each was based on a different victim and therefore a different unit of prosecution. Id. at 313-14.

. If the Government is correct that the unit of prosecution is crime of violence, it does not have to prove separate uses to charge two § 924(c) charges as long as there are two underlying crimes of violence. The Government therefore would not be positing "[a] sort of appearing and then disappearing elemental burden, a world in which verbs vanish but their modifiers float freely and commandingly alone.” Maj. Op. at 1121. Proving one use and two crimes of violence would be sufficient to meet the elements of two § 924(c) charges and would not run afoul of any unit of prosecution issues.

. The Government's supplemental brief states, “The statute’s plain language indicates that the unit of prosecution is the use or carrying of a firearm during and in relation to an underlying crime of violence or drug trafficking crime.” Aplt. Suppl. Br. at 6. If this truly were the Government’s position — that the unit of prosecution is use and crime of violence — it could not charge two § 924(c) offenses when there is only one use. The Government’s brief later clarifies its position, stating that "a defendant who uses a firearm to commit two crimes of violence may be charged with two violations of § 924(c), regardless of whether he ‘used’ the firearm more than once.” Aplt. Suppl. Br. at 10. Because the Government views the number of underlying crimes as determining the number of possible § 924(c) charges, I understand the Government more precisely to be arguing that the unit of prosecution is defined by the phrase "during and in relation to any crime of violence.” 18 U.S.C. § 924(c)(1)(A).

. This part of the statute provides that whoever commits the two elements — use and crime of violence — "shall, in addition to the punishment provided for such crime of violence ... be sentenced to a term of imprisonment of not less than five years.” 18 U.S.C. § 924(c)(1)(a). This clause could possibly have solved the unit-of-prosecution puzzle by stating "sentenced to an additional five-year term for the crime of violence” or "for the use of a firearm.” But instead it leaves the matter ambiguous.

. The majority’s discussion of § 924(c)'s broader context points in the opposite direction, Maj. Op. at 1121-23, contributing to § 924(c)’s ambiguity as to its unit of prosecution.

. The dissent views the unit of prosecution as both the use of a firearm and crime of violence, and concludes that charging two § 924(c) counts against Mr. Rentz was proper even though he used the firearm only once. See Dissent at 1131-32. The statute, however, does not unambiguously allow such double counting of "use” or clearly identify the unit of prosecution, which takes us to the rule of lenity to resolve this case.

. The Government argues the unit of prosecution is "crime of violence,” and justifies the two § 924(c) charges based on the assault and murder crimes alleged against Mr. Rentz. Mr. Rentz does not advocate a particular unit of prosecution, arguing instead the statute is ambiguous on this question. I agree with him. The majority opinion’s analysis of § 924(c)’s verbs — "uses,” “carries,” "possesses” — suggests "use” may be the unit of prosecution. See Maj. Op. at 1119-20. And this is how the dissent reads the majority opinion. See Dissent at 1130. But the majority opinion also points out that the verbs should be read together with "crime of violence,” suggesting "use” plus "crime of violence” is the unit of prosecution. Id. at 1120-21; see also id. at 1113 ("Here that means the government must prove both a use, carry, or possession as well as a qualifying crime.”). My view is that the statute is ambiguous as to which possibility— "use,” "crime of violence,” or "use” plus "crime of violence” — is the unit of prosecution, so much so that the rule of lenity should be used to decide this case. The rule of lenity does not compel us to choose a unit of prosecution; it provides only one 924(c) charge is permissible in this case.

. The majority’s reliance on lenity ”[t]o the extent any ambiguity remains,” Maj. Op. at 1124, must mean that, even after its textual analysis of the statute’s verb and adverb structure, “grievous ambiguity” remains.

. The Government argues the present case is not analogous to Finley or Wallace but instead is similar to United States v. Mejia, 545 F.3d 179, 205-06 (2d Cir.2008), in which the Second Circuit distinguished its prior cases and upheld three § 924(c) counts when the defendants had shot three victims with multiple bullets. Mejia relied on a prior Second Circuit case, United States v. Lindsay, 985 F.2d 666, 675 (2d Cir.1993), which held that the appropriate unit of prosecution in a § 924(c) possession case was the predicate offense rather than the number of firearms. See Mejia, 545 F.3d at 206 ("[T]he rule in Lindsay, which establishes that the appropriate unit of prosecution under § 924(c)(1) is the predicate offense, applies here.”)
Mejia is inapposite to this case. In Mejia, unlike here, the court found the defendants used a firearm multiple times during two drive-by shootings, causing three assaults of three victims, even though the uses happened around the same time. See id. at 205-06 ("Although those separate shootings are clustered in time and space, that clustering does not somehow merge them into one predicate crime.”). The Mejia court did not have the opportunity to consider the circumstance we have here, in which a single use of a firearm gives rise to multiple predicate offenses.
And Lindsay may actually provide support for the position taken here. In Lindsay, the Second Circuit acknowledged the statute "is ambiguous as to the appropriate unit of prosecution.” Lindsay, 985 F.2d at 675. As such, it "invoke[d] the rule of lenity and concludefd] that a defendant who uses multiple firearms in relation to a single drug-traffick *1127 ing crime may be charged with only one violation of § 924(c)(1).” Id. at 676 (citations omitted). The court appears to have decided that "the appropriate unit of prosecution [is] the underlying drug-trafficking offense, not the separate firearms,” in part, by invoking the rule of lenity. Id. at 674. The rule of lenity convinced it to adopt the unit of prosecution that would lead to fewer § 924(c) charges. As explained, we use the rule of lenity here not to make a decision on the unit of prosecution, but rather to decide the number of appropriate § 924(c) charges. Further, the Second Circuit in Lindsay held only that the number of firearms in a possession case— as opposed to the number of gunshots in a use case — does not determine the unit of prosecution under § 924(c). Id. at 675.

.18 U.S.C. § 924(j) provides that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through use of a firearm, shall' — (1) if the killing is a murder ... be punished by death or by imprisonment for any term of years or for life; and (2) if the killing is manslaughter ..., be punished as provided in that section.”
Section 924(j) is not a distinct offense from § 924(c), but rather operates as a penalty enhancement on top of a § 924(c) charge. For ease of reference, the following discussion refers to both of Mr. Barrett’s charges simply as " § 924(c)’charges” or " § 924(c) counts.”

. This court characterized "both counts [as being] based on Barrett's commission of several underlying offenses with a single, continuous use of a firearm.” Barrett, 496 F.3d at 1096.

. In his direct appeal, Mr. Barrett asserted a host of issues, including several that were never presented to the district court. In par *1129 ticular, Mr. Barrett argued for the first time that the indictment in his case "was multiplicitous” because "all counts [we]re based on the same conduct, firearms and drugs, and for killing the same person.” Defendant/Appellant’s Brief at 41-42, Barrett, 496 F.3d 1079 (No. 06-7005).

. The panel also noted that Mr. Rentz’s case presented a stronger case for multiple § 924(c) charges than Barrett because Mr. Rentz shot two victims and Mr. Barrett shot only one. See Rentz, 735 F.3d at 1252. The dissent relies on the number of victims. See Dissent at 1131-32. But § 924(c) does not use the word "victim” or any similar term to denote the object of the crime. Cf. Shrader, 675 F.3d at 309-10, 313-14 (considering the federal stalking offense that explicitly refers to the victim and deciding the victim is the unit of prosecution). The number of victims may determine the number of underlying crimes— for instance, when a defendant assaults two victims rather than one — but “victim” cannot be the unit of prosecution for a § 924(c) charge because § 924(c) does not address the number of victims.
Even in cases considering statutes that explicitly refer to the victim, the Supreme Court *1130 and this court have applied the rule of lenity to find only one charge could result despite the existence of multiple victims. See Ladner, 358 U.S. at 170-71, 79 S.Ct. 209 (holding only one 18 U.S.C. § 254 charge could result from a single discharge of a gun wounding two officers); Bell, 349 U.S. at 81-83, 75 S.Ct. 620 (holding only one Mann Act charge could result from the single transport of two women); Jackson, 736 F.3d at 955-57 (holding only one 18 U.S.C. § 2113(a) charge could result from one bank robbery-related accident resulting in the death of two women).

. This court’s holding should be limited to cases in which a defendant uses a single gun a single time and commits two separate crimes of violence as a result. This court does not address in this appeal how § 924(c) should apply when a defendant uses a firearm multiple times in a single criminal episode or continually possesses a firearm or firearms while committing multiple violent or drug trafficking offenses. I also agree with the majority that the question of “what exactly suffices to constitute a unique and independent use, carry, or possession,” Maj. Op. at 1126, should be left to another day.
We have previously upheld multiple convictions under § 924(c) arising from a single criminal episode or continual possession of a single or multiple firearms, so long as the underlying offenses were separate for double jeopardy purposes. See United States v. Renteria, 720 F.3d 1245, 1256 (10th Cir.2013) (upholding under plain error review two § 924(c) charges for possession of methamphetamine with intent to distribute and conspiracy to traffic in methamphetamine when there was possession of several firearms); United States v. Malone, 222 F.3d 1286, 1292-93 (10th Cir.2000) (upholding two § 924(c) convictions for using a firearm in relation to the crimes of robbery and carjacking arising from a continuous course of conduct); United States v. Floyd, 81 F.3d 1517, 1527 (10th Cir.1996) (permitting two § 924(c) counts for using a firearm during the underlying offenses of kidnapping and carjacking arising from a single course of conduct); United States v. Davis, 55 F.3d 517, 519-20 (10th Cir.1995) (upholding two § 924(c) charges for the possession of crack cocaine and the possession of powder cocaine when the defendant possessed a different gun as to each offense); United States v. Callwood, 66 F.3d 1110, 1114-15 (10th Cir.1995) (upholding three convictions under § 924(c) tied to three separate drug-related offenses when the defendant possessed one gun); Sturmoski, 971 F.2d at 461-62 (upholding two § 924(c) charges for the crimes of maintaining an establishment for the purpose of methamphetamine manufacture and attempting to manufacture methamphetamine when the defendant possessed one firearm); United States v. Abreu, 962 F.2d 1425, 1432-34 (10th Cir.1992) (upholding two § 924(c) convictions for possession with intent to distribute cocaine and conspiracy to possess cocaine with intent to distribute when the defendant possessed -a different gun as to each offense).